¶ 1.
SHIRLEY S. ABRAHAMSON, J.[1]
This is a review of an unpublished decision of the court of appeals affirming an order of the circuit court for Trempealeau County, La Crosse County Circuit Court Judge Elliott M. Levine, presiding.[2] The order of the circuit court affirmed the Trempealeau County Environment & Land Use Committee's denial of the conditional use permit application for non-metallic mineral mining submitted by AllEnergy Corporation and All- *338 Energy Silica, Arcadia, LLC (collectively AllEnergy). The non-metallic mineral mining in the instant case is mining, processing and transporting silica sand used in hydraulic fracturing (fracking).
f 2. Naming the Trempealeau County Environment & Land Use Committee as respondent, AllEn-ergy sought certiorari review in the circuit court of the denial of its application for a conditional use permit; appealed the order of the circuit court to the court of appeals; and then sought review of the decision of the court of appeals in this court.[3]
¶ 3. The issues presented in AllEnergy's brief and addressed by the Trempealeau County Environment & Land Use Committee's brief are the following:
I. Did the Trempealeau County Environment & Land Use Committee, an appointed body without the power to legislate, exceed its jurisdiction by denying a conditional use permit based on broad legislative concerns over the public health, safety, and welfare?
II. Did substantial evidence in the administrative record support the denial of a conditional use permit for non-metallic mining?
III. Should the court adopt a new doctrine that a conditional use permit applicant is entitled to the permit where (A) all ordinance conditions and standards are met and (B) additional conditions *339 can be adopted that address potentially-adverse impacts from the use?[4]
¶ 4. AllEnergy's statement of the third issue is premised on AllEnergy's argument that AllEnergy satisfied, as a matter of law, all the specific conditions in the ordinance and that the Trempealeau County Environment & Land Use Committee cannot require AllEn-ergy to satisfy "subjective," "generalized" conditions and standards in the ordinance.
*340 ¶ 5. Before we address each issue in turn, we briefly state the certiorari standard of review to provide context for the issues and our decision.
¶ 6. The first two issues stated above relate to certiorari review of the Trempealeau County Environment & Land Use Committee's decision denying AllEn-ergy a conditional use permit.[5] A person aggrieved by the denial of a conditional use permit may commence an action seeking the remedy available by certiorari. Wis. Stat. § 59.694(10) (2013-14).[6]
¶ 7. In the instant certiorari review, the decision of the Trempealeau County Environment & Land Use Committee is accorded a presumption of correctness and validity.[7] Certiorari review is limited to whether the Trempealeau County Environment & Land Use Committee:
*341 1. Kept within its jurisdiction;
2. Proceeded on a correct theory of law;
3. Acted in an arbitrary, oppressive, or unreasonable manner that represented its will and not its judgment; and
4. Might reasonably , make the order or determination in question based on evidence.[8]
¶ 8. AllEnergy's focus—and therefore our focus and that of the circuit court and court of appeals—is on the first and fourth inquiries on certiorari review. Nevertheless, we recognize that AllEnergy sometimes seems to fuse its arguments on the first and fourth inquiries in a certiorari review with the third inquiry, namely whether the Trempealeau County Environment & Land Use Committee acted in an arbitrary, oppressive, or unreasonable manner that represented its will, not its judgment. Our discussion of the first and fourth inquiries demonstrates that the determination of the Committee was not arbitrary, oppressive, or unreasonable: The Committee addressed AllEnergy's arguments; the Committee addressed the provisions of the county's ordinance and its decision was the result of deliberation and judgment exercised within the range of discretion accorded it in the ordinance; and *342 the Committee's determination was reasonable, had a rational basis, and was supported by substantial evidence.[9]
¶ 9. On certiorari, this court reviews the record of the Trempealeau County Environment & Land Use Committee, rather than the judgment or findings of the circuit court or the decision of the court of appeals.[10] We have undertaken an independent review of the Committee's record but have benefitted from the court of appeals' comprehensive review.
f 10. For the reasons set forth, we conclude as follows:
I. The Trempealeau County Environment & Land Use Committee applied the factors and consider *343 ations set forth in the applicable ordinance and thus kept within its jurisdiction in denying a conditional use permit to AllEnergy.
II. There is substantial evidence in the record to support the Trempealeau County Environment & Land Use Committee's decision denying AllEner-gy's application for a conditional use permit.
III. The court will not overturn settled law governing review of a grant or denial of a conditional use permit. The court does not adopt the new legal doctrine urged by AllEnergy, namely that an applicant for a conditional use permit is entitled to the permit for a conditional use when it meets the specific conditions set forth in the ordinance and any additional conditions set forth, and that an applicant cannot be required to meet other conditions and standards in the ordinance.
¶ 11. Part I describes the proposed project for which AllEnergy sought a conditional use permit. In Parts II, III, and IV, we address each issue stated above. Issues I and II require a fact-intensive analysis to determine whether the Trempealeau County Environment & Land Use Committee kept within its jurisdiction and whether substantial evidence exists to support the Committee's denial of AllEnergy's application for a conditional use permit; the facts are set forth in Parts II and III.
I—I
¶ 12. Trempealeau County is home to several frac sand mines. Trempealeau County's rolling and bucolic hills hide vast reserves of silica sand. Silica sand is often called "frac sand," in reference to the *344 material's use as a proppant in hydraulic fracturing, that is, in "fracking." Fracking is a process used to extract previously inaccessible buried reserves of oil and natural gas. The process involves drilling an oil or natural gas well and using explosives to create cracks or fissures in the rock or subsurface material. A mixture of water, chemicals, and frac sand is injected to expand and hold open the cracks or fissures created by the explosives. The oil or natural gas reserves leach out of the cracks and fissures and into the wells.[11]
¶ 13. In May 2013, AIlEnergy located a site in the Town of Arcadia in Trempealeau County for a frac sand mine. The site is located in an Exclusive Agriculture 2 (EA-2) zoning district, which has the stated purpose to "preserveG class I, II and III soils and additional irrigated farmland from scattered residential developments that would threaten the future of agriculture . . ." and "to preserve woodlands, wetlands, natural areas and the rural atmosphere of the County."[12]
¶ 14. Because non-metallic mineral mining, including frac sand mining, requires a conditional use permit in Trempealeau County, AIlEnergy filed an application for such a permit and a non-metallic mineral mining reclamation plan with the County on August 2, 2013. The application describes a 550-acre project, which includes a 265-acre mine site, a processing plant, a conveyor system (to move sand and other materials around the facility), storm water retention ponds, and a rail spur connecting the facility to a Canadian Northern rail line.
*345 ¶ 15. AllEnergy's application also explains that it had received "favorable determinations" from various state and federal agencies regarding wetland-fill, storm water discharge, and highway-related permits.
¶ 16. Trempealeau County's Department of Land Management initially received the application and referred it to an engineering firm for third-party review. In response to the engineering firm's concerns, AllEnergy made changes to its plan. On August 27, 2013, the Department of Land Management deemed the plan "complete."[13]
¶ 17. Tasked with deciding whether a sand mine should be permitted in the EA-2 zoning district, the Trempealeau County Environment & Land Use Committee held a public hearing on AllEnergy's application on October 9, 2013. During the hearing, AllEnergy's representatives and its experts gave presentations on the project.
¶ 18. After AllEnergy's presentations, the hearing was opened to public testimony. Thirteen people testified against permitting the proposed non-metallic mine and two supported the mine. In addition, letters and e-mails were read into the record. According to the circuit court, " [ajpproximately 368 people went on record as being in favor of granting the conditional use permit, with the vast majority registering their support via form letter with little or no comment, includ *346 ing approximately 51 people who are residents of another state. Approximately 38 people went on record as being opposed to granting the conditional use permit, the majority of whom provided a reason for their position."
¶ 19. Generally, those favoring granting the conditional use permit cited increased employment. Those opposed cited environmental, health, and cultural concerns.
¶ 20. A lengthy discussion ensued between All-Energy's representatives and the members of the Trem-pealeau County Environment & Land Use Committee regarding the concerns expressed by the public about the project.
¶ 21. During the public hearing, the Trempea-leau County Environment & Land Use Committee reviewed the provisions of the County ordinance concerning conditional use permits, non-metallic mineral mining permits, and non-metallic mine reclamation. See Trempealeau County Zoning Ordinance chs. 10, 13, 20. The substance of these ordinance provisions will be discussed below. For now, it suffices to say that the Committee discussed many of the factors in the ordinance and that AIlEnergy was involved in this discussion.
f 22. After reviewing the ordinance provisions governing its decision, the Trempealeau County Environment & Land Use Committee discussed what conditions would have to be imposed on AllEnergy's conditional use permit before it would vote to grant the permit. After extensive discussion, the Committee voted 7-1 in favor of imposing numerous conditions on the conditional use permit.
f 23. After deciding on the approved conditions, the Trempealeau County Environment & Land Use *347 Committee voted 5-3 to deny AIlEnergy's application for a conditional use permit even with those conditions in place. The five members of the Committee who voted to deny the application stated their reasons for doing so on the record. The Committee also prepared a written summary of its decision pursuant to Trempea-leau County Zoning Ordinance § 13.03(4).[14]
II
¶ 24. AIlEnergy's first challenge is that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction when denying a conditional use permit to AllEnergy when it based its denial on "legislative concerns implicating public health, safety, and welfare."
f 25. To support this challenge, AllEnergy makes three arguments.
¶ 26. AllEnergy argues that the Trempealeau County Board of Supervisors decided, as a legislative matter in enacting the ordinance, that the public health, safety, and welfare may be served by allowing non-metallic mineral mining in an Exclusive Agriculture 2 (EA-2) zoning district. AllEnergy reasons that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction in denying AllEnergy a conditional use permit because the designation of a use in a zoning code as a conditional use by the Board of Supervisors conclusively establishes that the use is in the public interest.
*348 f 27. AIlEnergy also argues that because the Trempealeau County Board of Supervisors included non-metallic mineral mining as a conditional use within an EA-2 zoning district, such a use is presumptively valid and the proper inquiry for the Trempea-leau County Environment & Land Use Committee is whether the conditional use at the particular location carries impacts greater than the adverse impacts ordinarily associated with that use. AIlEnergy asserts further that it is entitled to a conditional use permit as of right because no evidence in the record demonstrates that the proposed non-metallic mineral mining site at the particular location carries impacts greater than the adverse impacts ordinarily associated with that use.[15]
¶ 28. AIlEnergy further bolsters its position that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction by arguing that the guideline of "public health, safety or general welfare" is too general to supply the necessary guidance for action by the Committee. In making this argument AIlEnergy does not refer to the constitution in its briefs, but its argument is a constitutional one attacking the ordinance as an invalid delegation of power to the Committee.
¶ 29. At oral argument, Justice Ziegler asked whether AIlEnergy was challenging the constitutionality of the ordinance. Counsel for AIlEnergy replied that the court stopped him from making such an argument.
¶ 30. The dialogue at oral argument proceeded as follows:
*349 Justice Ziegler: I'm curious, it doesn't seem that you have specifically made constitutional arguments that this is an unconstitutional delegation of authority or that this ordinance is unconstitutional either facially or as applied, or any other constitutional claims. I'm curious why not.
AllEnergy's counsel: Because this court told me I couldn't make them. That was one of the issues that we raised in our petition for review and the court granted review on the three issues that are stated in its order granting the petition. We did raise a constitutional issue, but it is not before this court.
¶ 31. Justice Ziegler and counsel, however, spoke past each other. AllEnergy's response to Justice Ziegler should have been that it did not raise an unconstitutional delegation of authority claim or make any facial or as-applied constitutional claim in its petition for review. See ¶ 3 n.3, supra (describing AllEnergy's statement of issues in its petition for review).
¶ 32. AllEnergy's petition for review did raise a constitutional issue that the court did not address in granting review. AllEnergy's petition for review raised a violation of due process and equal protection relating to judicial notice of certain documents. See ¶ 3 n.3, supra. This was not the constitutional argument to which Justice Ziegler was referring.
¶ 33. Undeniably, AllEnergy's brief attacks the constitutionality of the Trempealeau County ordinance, relying throughout its brief (in pages too numerous to cite in its Table of Authorities) on State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis. 2d 1, 130 N.W.2d 304 (1964), a case successfully challenging the constitutionality of an ordinance on the grounds of invalid standards in the ordinance.
*350 ¶ 34. Trempealeau County's brief correctly objects to AllEnergy's diverging into a constitutional argument in its discussion of whether the Trempea-leau County Environment & Land Use Committee exceeded its jurisdiction.
f 35. We disagree with the positions that AllEn-ergy urges. We conclude:
(A) By adhering to the Trempealeau County ordinance, the Trempealeau County Environment & Land Use Committee kept within its jurisdiction in denying AllEnergy's application for a conditional use permit in the instant case.
¶ 36. AllEnergy supports its challenge to the Committee's jurisdiction by three arguments. As to these three arguments, we conclude:
(B) Designation of non-metallic mineral mining as a conditional use in the zoning code does not conclusively establish that the use is in the public interest.
(C) The proper inquiry is not whether the proposed conditional use carries impacts greater than the adverse impacts ordinarily associated with that use, and
(D) The guidelines in the Trempealeau County ordinance, including the requirement that the Committee consider "public health, safety or general welfare," are constitutional.
A
¶ 37. To determine whether the Trempealeau County Environment & Land Use Committee kept within its jurisdiction, we compare the terms of the *351 ordinance to the Committee's action. The "kept within its jurisdiction" inquiry on certiorari review considers whether the applicable ordinance grants the Trempea-leau County Environment & Land Use Committee the authority to take the action it took. The Trempealeau County Environment & Land Use Committee, as an agency created by the County's legislative body, has those powers that are expressly conferred or that are necessarily implied by the ordinances under which it operates.[16]
¶ 38. The Trempealeau County Zoning Ordinance enacted by the Trempealeau County Board of Supervisors lists various criteria the Trempealeau County Environment & Land Use Committee is to consider in deciding whether to grant or deny an application for a conditional use permit.
¶ 39. The ordinance requires the Trempealeau County Environment & Land Use Committee to "review each conditional use permit application for compliance with all requirements applicable to that specific use and to all other relevant provisions of this Ordinance." The ordinance specifically directs the Committee to approve a conditional use permit only if it determines that "the proposed use at the proposed location will not be contrary to the public interest and *352 will not be detrimental or injurious to the public health, public safety, or character of the surrounding area." Trempealeau County Zoning Ordinance § 10.04(5)(a).
¶ 40. The Trempealeau County Zoning Ordinance provides 16 other factors to guide the Trempea-leau County Environment & Land Use Committee's inquiry in its decision-making function regarding a conditional use permit, including:
1. Whether the proposed project will adversely affect property in the area.
2. Whether the proposed use is similar to other uses in the area.
3. Whether the proposed project is consistent with adopted Trempealeau County plans or any officially adopted town plan.
[[Image here]]
7. Whether the proposed use creates noise, odor, or dust.
[[Image here]]
11. Provision for proper surface water drainage.
[[Image here]]
13. Whether the proposed project creates excessive exterior lighting glare or spillover onto neighboring properties.
14. Whether the proposed project leads to a change in the natural character of the area through the removal of natural vegetation or altering of the topography.
15. Whether the proposed project would adversely affect the natural beauty of the area.
*353 16. Whether the proposed project would adversely affect any historic or archeological sites.
Trempealeau County Zoning Ordinance § 10.04(5)(b).
¶ 41. Moreover, the Trempealeau County Environment & Land Use Committee is not limited to considering the factors specified in the ordinance. It may consider "additional factors as are deemed by it to be relevant to its decision making process . . . ." Trem-pealeau County Zoning Ordinance § 10.04(5)(b). The Committee did not rely on this latter provision.
¶ 42. In addition to the criteria governing the granting of conditional use permits stated above, additional considerations for authorizing non-metallic mineral mining are set forth in Chapter 13 of the Trempealeau County Zoning Ordinance. The Trempea-leau County Environment & Land Use Committee is required to analyze proposals for non-metallic mineral mining "in light of the County's interest in providing for the wise use of the natural resources of the county, aesthetic implications of the siting of such a mine at a given location and the impacts of such a mining operation on the general health, safety and welfare of the public." Trempealeau County Zoning Ordinance § 13.01.
f 43. The zoning ordinance governing nonmetallic mineral mining sets forth another eight factors the Trempealeau County Environment & Land Use Committee shall consider, "among other factors," when considering an application for a non-metallic mineral mine permit:
(a) When considering an application for a non-metallic mineral mine permit, the County shall consider, among other factors, the following: the effect or impact of the proposed operation upon; (1) public infrastructure, including but not limited to streets and high *354 ways, schools and other public facilities; (2) present and proposed uses of land in the vicinity of the proposed operation; (3) surface water drainage, water quality and supply; (4) soil erosion; (5) aesthetics, including but not limited to scenic beauty and the conservation of natural resources of outstanding quality or uniqueness; (6) the market value of lands in the vicinity of the proposed operation; (7) the physical practicality of reclamation of the site after the operation has been concluded; and (8) the public interest from the standpoints of smoke, dust, noxious or toxic gases and odors, noise, vibration, blasting and the operation of heavy machinery and equipment.
Trempealeau County Zoning Ordinance § 13.03(3)(a).
f 44. The ordinance also requires the Committee to determine whether the proposed non-metallic mining operation is an appropriate land use at the site in question, including the ability of the operator to avoid harm to the legitimate interests of properties in the vicinity of the proposed operation, as follows:
(b) In order to grant a conditional use permit for non-metallic mineral mining, the County shall find that the proposed operation is an appropriate land use at the site in question, based upon consideration of such factors as: existence of non-metallic mineral deposits; proximity of site to transportation facilities and to markets; and the ability of the operator to avoid harm to the public health, safety and welfare and to the legitimate interests of properties in the vicinity of the proposed operation.
Trempealeau County Zoning Ordinance § 13.03(3)(b).
¶ 45. The ordinance acknowledges, however, despite the extensive criteria outlined above, that it is "impossible to prescribe the criteria upon which such a permit may be granted in each and every case." Trem-pealeau County Zoning Ordinance § 13.01.
*355 ¶ 46. In determining whether to grant AllEnergy a conditional use permit, the Trempealeau County Environment & Land Use Committee considered and applied the criteria set forth in the ordinance.
¶ 47. Each member of the Trempealeau County Environment & Land Use Committee who voted against granting AllEnergy's application stated his or her reasons as follows:
Committee member Void: The reason I thought it was an attempt to [negate] the moratorium was that—I wasn't here for the moratorium but I read it. I thought that the booklet was quite incomplete, there was too many unanswered questions in the application process and I felt there was more questions than there were answers.
Committee member Zeglin: I too agree that the plan seemed to be rushed; it was revised after the third party review. Things should have completed before that and it leads one to wonder how many times it may be revised again. The lack of a reclamation plan provided in the initial plan. That should have been done initially. I have numerous environmental concerns about the significant wetlands in the area, the river at this point historically was and is constantly changing it is very hard to plan anything on a long range basis. I'm very concerned with the water table in the area—it is very high. I haven't been convinced that it will not be disturbed. Virg you can add the river constantly floods, changes course.
Committee member Brandt: My reasons were wetland location is too close to sensitive water and wildlife resources and the inability of the applicant to mitigate those concerns to my satisfaction. Um, the possibility of possible significant danger to ground water, by processes involved in mining and processing, and the high capacity well. Number 3 is the significant change to the landscape and to the local cultural. . . *356 and social conditions. Um, and the other issues that had been brought up by staff and the public included the reclamation plan.
Committee member Patzner: Well, I represent the Farm Service Agency and I'm for agriculture. Agriculture has a history of bringing stability and jobs to our local economy, where sand mines have a history of boom or bust on the local economy, therefore destroying good productive agricultural land is not a wise decision. We don't want to destroy our outdoor recreation potential, like hunting, biking and other activities that attract visitors, retirees and people that love scenic beauty who are close to work and live here. There are health concerns with mining so we need to protect our residents.
Committee member Bawek: Based on information given as referenced and my own findings, along with public concerns given at this meeting, this siting does not seem to be in the best interest of our citizens nor in the best use of our natural resources of Trempealeau County. Soil around and in the site bring into question the potential for water problems. Trout Run Creek and the close proximity to the Trempealeau River deem this site as poor. The potential loss of some unique resources for both ourselves and future generations comes into question. That's it.
¶ 48. It is evident that the Trempealeau County Environment & Land Use Committee exercised the powers conferred by the ordinance. It considered factors set forth in the ordinance for granting a conditional use permit. These factors included the impact of AllEnergy's mine on the general health, safety, and welfare of the public; the wise use of the county's material resources; the aesthetic implications of the siting of the mine; and the adverse effects of the mine on the environment (including water quality, ground water, and wetlands), scenic beauty, wildlife, and rec *357 reational opportunities. After considering these factors, the Committee determined that AllEnergy's application for a conditional use permit should be denied.
f 49. Because the Trempealeau County Environment & Land Use Committee considered the factors the Trempealeau County Board of Supervisors directed the Committee to consider, we conclude that the Committee kept within its jurisdiction.
B
¶ 50. Our case law has not accepted what AllEn-ergy advocates as a new doctrine in Wisconsin, namely that a legislative listing of a conditional use equates to a legislative determination that the use is in the public interest. AllEnergy urges the court to apply this doctrine and hold that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction when it denied a conditional use permit for non-metallic mineral mining, a conditional use listed in the ordinance.
¶ 51. In Edward Kraemer & Sons, Inc. v. Sauk County Board of Adjustment, 183 Wis. 2d 1, 7, 16-17, 515 N.W.2d 256 (1994), the court declared that the court of appeals erred in believing "that the mineral extraction permit had to be granted and if conditions were necessary to ensure compliance with the ordinance, the Board was obligated to fashion them."
¶ 52. Indeed, the Kraemer court concluded that conditional uses may be authorized pursuant to the ordinance, but they are not uses as of right. They are allowed only if approved by the appropriate local governmental authority.[17]
*358 ¶ 53. In Delta Biological Resources, Inc. v. Board of Zoning Appeals of the City of Milwaukee, 160 Wis. 2d 905, 912, 467 N.W.2d 164 (Wis. App. 1991), the court of appeals emphasized: "[T]he presumption that the conditional use serves the public interest [ ] does not exist in Wisconsin. . . . The zoning ordinance allows certain uses, provided certain conditions are met. These conditions are not presumed to be met either by judicial fiat or by the terms of the ordinance . . . ."[18]
¶ 54. In Wisconsin, and in many states, a conditional use is one that has been legislatively determined to be compatible in a particular area, not a use that is always compatible at a specific site within that area. In these states, the decision whether to grant a conditional use permit is discretionary. The relevant entity determines whether a particular site will accommodate a proposed particular use. In other states, decision makers have less discretion on requests for a conditional use permit.[19]
¶ 55. Thus, our precedent dictates that no presumption exists that a conditional use is ipso facto *359 consistent with the public interest or that a conditional use is a use as of right at a particular site within an area zoned to permit that conditional use.[20] No compelling reason has been given to justify deviating from Wisconsin precedent and eliminating site-specific flexibility in local zoning matters.
C
¶ 56. No Wisconsin case has concluded that the proper inquiry for a local government entity in considering an application for a conditional use permit is whether the conditional use carries adverse impacts greater than the adverse impacts ordinarily associated with that use. This approach does not comport with precedent, and no compelling reason has been given to justify deviating from precedent.
D
¶ 57. AllEnergy bolsters its argument that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction in denying AllEnergy's application for a conditional use permit with the contention that the provisions of the Trem-pealeau County ordinance impermissibly require the *360 Committee to look at "legislative considerations of public health, safety and welfare." According to AllEn-ergy, the Committee can consider only objective factors, not public interest factors.
¶ 58. It appears that AllEnergy is trying to shoehorn a constitutional challenge into the "exceeds jurisdiction" aspect of certiorari review without explicitly saying so. See ¶¶ 29-33, supra.
¶ 59. We understand AllEnergy to be challenging the Trempealeau County Ordinance on the ground that its standards are unconstitutionally vague and do not guide the Trempealeau County Environment & Land Use Committee's decision-making process.[21] We are not persuaded by AllEnergy's implied constitutional argument.
¶ 60. To begin, we emphasize our role in determining the constitutionality of an ordinance. An ordinance is presumed valid. It must be liberally construed in favor of the decision rendered by the local governmental entity.[22] A party challenging the constitutionality of an ordinance bears a heavy burden to show that the ordinance is unconstitutional beyond a reasonable doubt:
The role of courts in zoning matters is limited because zoning is a legislative function. An ordinance is presumed valid and must be liberally construed in favor of *361 the municipality. The party challenging the constitutionality of an ordinance bears a heavy burden. In Wisconsin, "an ordinance will be held constitutional unless the contrary is shown beyond a reasonable doubt, and the ordinance is entitled to every presumption in favor of its validity."
Town of Rhine v. Bizzell, 2008 WI 76, ¶ 26, 311 Wis. 2d 1, 751 N.W.2d 78 (citations omitted).
¶ 61. Edward Kraemer & Sons, Inc. v. Sauk County Board of Adjustment, 183 Wis. 2d 1, 515 N.W.2d 256 (1994), illustrates an ordinance permissibly requiring a zoning entity to consider public interest factors in issuing a conditional use permit.
¶ 62. In Kraemer, the Sauk County Board of Adjustment denied an application for a conditional use permit to extract minerals because of concern that the project would harm the Baraboo Bluffs, "an important natural resource." Kraemer, 183 Wis. 2d at 11. The court explained that, under the ordinance governing the granting of a special exception permit for mineral extraction,[23] the Board must consider "the ability of the operation ... to avoid harm to the public health, safety and welfare and to the legitimate interests of nearby properties." Kraemer, 183 Wis. 2d at 6.
¶ 63. The petitioner, Edward Kraemer & Sons, argued that the standards in the ordinance are not sufficiently specific to withstand attack on the grounds that they constitute an unconstitutional delegation of legislative authority. Kraemer, 183 Wis. 2d at 13.
¶ 64. The Kraemer court upheld the constitutionality of the Sauk County ordinance's standard of public *362 health, safety, and welfare as permissible criteria for the Board to consider in determining whether to grant a conditional use permit, stating:
[T]he "public health, safety and welfare" standard! ] is a general standard that provides the Board with flexibility and discretion to consider how a proposed special exception could affect the public welfare. The standard allows the Board to consider potential harm to individuals living near the proposed mineral extraction site, including exposure to health hazards from the dust and threats to safety posed by blasting. The public health, safety and welfare standard is also broad enough to enable the Board to consider the generalized effects on the public welfare that concerned the Board in this case—harm to the public that would result from partial destruction of a natural area that both permit supporters and opponents agree is of great geological importance.
Kraemer, 183 Wis. 2d at 11.
f 65. The Kraemer court, 183 Wis. 2d 1, 14, citing 3 Edward H. Ziegler, Rathkopf's The Law of Zoning and Planning § 41.11 at 41—49 (4th ed. 1993), further declared that these "generalized standards are acceptable in most jurisdictions." The mere fact that the "standards are general in nature does not impair the validity of these portions of the ordinance." Kraemer, 183 Wis. 2d 1, 14-15. According to the Kraemer court, 183 Wis. 2d 1, 14 (quoting Rathkopf's § 41.11 at 41-49), the ordinance's general standards served a beneficial purpose:
The purpose of the special exception-conditional use technique is to confer a degree of flexibility in the land use regulations. This would be lost if overly detailed standards covering each specific situation in which the *363 use is to be granted or, conversely, each situation in which it is to be denied, were required to be placed in the ordinance.
¶ 66. The Kraemer court ultimately ruled that the standards in the Sauk County ordinance were specific enough to guide the action of the Board. Kraemer, 183 Wis. 2d at 11-12.[24]
¶ 67. AllEnergy calls on the court to overrule Kraemer and to be guided instead by State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis. 2d 1, 130 N.W.2d 304 (1964). The reference to Humble Oil is unavailing.
¶ 68. In Humble Oil, a town's zoning ordinance classified gas stations as conditional uses. Gas stations were permitted as a conditional use in a commercial zone only if approved by the zoning board of appeals. The only "guideline" in the ordinance provided that "in interpreting and applying the provisions of this ordinance they shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, prosperity or general welfare . . . ." Humble Oil, 25 Wis. 2d at 7.
¶ 69. The Humble Oil court concluded that this "guideline" does not prescribe adequate standards to govern the board in its disposition of a request to build a filling station. The court characterized the "guide *364 line" as a listing of factors that justify the zoning ordinance; the factors are too general and too remotely related to what the board is required to do to supply the necessary guidelines for the board or Humble Oil. The court stated that the ordinance did not "inform Humble and any other parties hoping to build filling stations of what was required of them and what factors were to be considered by the board in disposing of each application . . . and this was bound to create a situation in which the board could do just as it pleased." Humble Oil, 25 Wis. 2d at 11.
¶ 70. The court was careful in Humble Oil, however, to preserve the board's exercise of discretion and judgment in issuing conditional use permits. The Humble Oil court reviewed several cases that addressed the validity of the standards set forth in zoning ordinances. Humble Oil, 25 Wis. 2d at 8-9. For instance, in discussing prior cases ruling on whether an ordinance was too broad, the court referred approvingly to ordinances that "contained guidelines that pinpointed some of the considerations that were to govern the exercise of discretionary power either by the common council or the zoning board." Humble Oil, 25 Wis. 2d at 9. In contrast, the ordinance in the Humble Oil case did not pinpoint any such considerations.
¶ 71. Applying Kraemer and Humble Oil, we conclude that the Trempealeau County ordinance at issue in the instant case is more similar to the Kraemer ordinance and to the ordinance the court upheld in Smith v. City of Brookfield, 272 Wis. 1, 7—10, 74 N.W.2d 770 (1956),[25] than to the ordinance the court declared unconstitutionally vague in Humble Oil.
*365 ¶ 72. After comparing Humble Oil and Smith, the court of appeals in Guse v. City of New Berlin, 2012 WI App 24, ¶¶ 10-12, 339 Wis. 2d 399, 810 N.W.2d 838, concluded that "ordinances may vest boards with some (and even significant) discretion without being unconstitutionally vague." Like the ordinances in Kraemer, Smith, and Guse, Trempealeau County's zoning ordinance does not "blanket the [Committee] with unfettered discretion." Guse, 339 Wis. 2d 399, ¶ 11.[26]
¶ 73. In sum, the Trempealeau County Environment & Land Use Committee kept within its jurisdiction. It exercised its discretion in deciding whether to grant AllEnergy's application for a conditional use permit, adhering to the criteria set forth in the ordinance.
h-H h-1 h-1
1 74. We turn now to the second issue AIlEnergy presents: Whether the Trempealeau County Environment & Land Use Committee "might reasonably make the order or determination in question based on *366 evidence." This issue raises the question of the sufficiency of the evidence supporting the Committee's decision. The sufficiency of the evidence is determined under the substantial evidence test.[27]
¶ 75. Substantial evidence is evidence of such convincing power that reasonable persons could reach the same decision as the local governmental entity,[28] even if there is also substantial evidence to support the opposite decision.[29] Reasonable inferences may be drawn from credible evidence.[30] If "credible, relevant and probative evidence upon which reasonable persons could rely to reach a decision" supports the decision of the Trempealeau County Environment & Land Use Committee, the court will uphold the decision.[31]
¶ 76. Quantitatively, substantial evidence is less than a preponderance of the evidence, Smith v. City of *367 Milwaukee, 2014 WI App 95, ¶ 22, 356 Wis. 2d 779, 854 N.W.2d 857, but "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.' " Gehin v. Wis. Group Ins. Bd., 2005 WI 16, ¶ 48, 278 Wis. 2d 111, 692 N.W.2d 572 (quoted sources omitted).
¶ 77. AllEnergy contends that there is no substantial evidence in the record upon which the Trem-pealeau County Environment & Land Use Committee could deny AllEnergy's application because the Committee could not rely on the "uncorroborated hearsay" in the record or the lay opinions by persons lacking appropriate special expertise.
f 78. AllEnergy errs in trying to apply the Wisconsin Rules of Evidence to the instant case. The Wisconsin Rules of Evidence govern court proceedings, not administrative proceedings. Wisconsin Stat. § 901.01 states that Chapters 901.01 to 901.11, the Wisconsin Rules of Evidence, "govern proceedings in the courts of the state of Wisconsin . . . ." The Wisconsin Rules of Evidence, by their very terms, do not govern the proceedings of the Trempealeau County Environment & Land Use Committee, administrative proceedings.
¶ 79. More recently, this court stated: "[A]n agency or hearing examiner is not ordinarily bound by common law or statutory rules of evidence." Gehin, 278 Wis. 2d 111, ¶¶ 6, 49-50.[32]
*368 ¶ 80. AllEnergy cites Folding Furniture Works v. Wisconsin Labor Relations Board, 232 Wis. 170, 285 N.W. 851 (1939), as support for its restrictive view of what constitutes substantial evidence. But Folding Furniture does not support AllEnergy.
¶ 81. In Folding Furniture, 232 Wis. at 188, the court stated that an administrative decision cannot be based on uncorroborated hearsay alone; uncorroborated hearsay alone does not constitute substantial evidence. But Folding Furniture made clear that an administrative decision is based on substantial evidence if it is based on evidence having rational probative force.
¶ 82. Folding Furniture, 232 Wis. at 189, quotes with favor Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229-30 (1938), in which the United States Supreme Court stated: Mere uncorroborated evidence does not constitute substantial evidence. Substantial evidence means evidence having rational probative force, that is, relevant evidence accepted by a reasonable mind as adequate to support a conclusion. The Consolidated Edison Court stated as follows:
The obvious purpose of this and similar provisions [freeing an administrative agency of rules of evidence] *369 is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. . .. But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence.
[[Image here]]
Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (Emphasis added and citations omitted).
f 83. As this court discussed in Gehin, a subsequent United States Supreme Court case, Richardson v. Perales, 402 U.S. 389, 407-08 (1971), explained the Consolidated Edison language that "mere uncorroborated hearsay" is not substantial evidence by emphasizing the language "rational probative effect" and explaining that hearsay can have such an effect:
Although the [medical] reports are hearsay in the technical sense, because their content is not produced live before the hearing examiner, we feel that the claimant and the Court of Appeals read too much into the single sentence from Consolidated Edison. The contrast the Chief Justice was drawing, at the very page cited, was not with material that would be deemed formally inadmissible in judicial proceedings but with material 'without a basis in evidence having rational probative force.[1] This was not a blanket rejection by the Court of administrative reliance on hearsay irrespective of reliability and probative value. The opposite was the case.
*370 ¶ 84. In Gehin v. Wisconsin Group Insurance Board, 2005 WI 16, ¶ 54, 278 Wis. 2d 111, 692 N.W.2d 572, the court reinforced Folding Furniture (and Consolidated Edison), stating that Folding Furniture allows flexibility in the admission of hearsay evidence but that "this flexibility does not go so far as to justify administrative findings that are not based on evidence having a rational probative force."
¶ 85. Folding Furniture (adopting the Consolidated Edison language) has been followed in Wisconsin since 1939. Gehin, 278 Wis. 2d 111, ¶ 56. We adhere to Folding Furniture in the instant case.
f 86. In any event, the Trempealeau County Environment & Land Use Committee did not base its denial of AllEnergy's application for a conditional use permit solely on uncorroborated hearsay. Indeed, as we illustrate below, the record is replete with specific and substantial representations of people describing their first-hand experiences with frac sand mines and their opinions.
¶ 87. The Committee and the courts would be remiss to ignore the words of concerned persons familiar with frac sand mining and the environs. Zoning is a matter of local concern, and many of the people commenting at the hearing on AllEnergy's proposal have either lived near a frac sand mine or will be living, working, and recreating alongside the proposed mine. The language of the Trempealeau County Zoning Ordinance clearly anticipates and invites public opinion. Thus, public expressions of support or opposition establish a valid basis—that is, substantial evidence— for a decision on AllEnergy's application for a conditional use permit.[33]
*371 ¶ 88. The substantial evidence test is a significant hurdle for AllEnergy to overcome because, in applying the test, this court is deferential to the decision of the Trempealeau County Environment & Land Use Committee.[34] Certiorari review accords the decision of the local governmental entity a presumption of "correctness and validity."[35]
¶ 89. Finally, in applying the substantial evidence test on certiorari review, a court does not reweigh the evidence. Roberts v. Manitowoc Cty. Bd. of Adjustment, 2006 WI App 169, ¶ 32, 295 Wis. 2d 522, 721 N.W.2d 499. Rather, we consider only whether the Trempealeau County Environment & Land Use Corn- *372 mittee made a reasonable decision based on the evidence before it.[36] In making this determination, we may look to the whole record. "[A] reviewing court should consider the context of the evidence when determining whether it supports a municipality's action." Oneida Seven Generations Corp. v. City of Green Bay, 2015 WI 50, ¶ 45, 362 Wis. 2d 290, 865 N.W.2d 162.
¶ 90. The context in which we consider the evidence in the instant case is the location and nature of the proposed non-metallic mineral mine, the applicable provisions of the Trempealeau County ordinance, and the record of the hearing before the Trempealeau County Environment & Land Use Committee.
¶ 91. The proposed mine area was to be located in an Exclusive Agriculture (EA-2) district. Non-metallic mineral mining, including industrial frac sand mining, is a conditional use in EA-2 districts. Trempealeau County Zoning Ordinance § 13.01. "Conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." Town of Rhine v. Bizzell, 2008 WI 76, ¶ 20, 311 Wis. 2d 1, 751 N.W.2d 780. The Trempealeau County Board of Supervisors concluded that non-metallic mineral mines may be desirable in EA-2 districts, but only if the applicant for a conditional use permit demonstrates that it will meet the standards contained in the County's ordinance. See ¶¶ 39-45, supra.
*373 f 92. Under the provision in the ordinance governing conditional uses, the Trempealeau County Environment & Land Use Committee has to determine that AllEnergy's proposed mine "will not be contrary to the public interest and will not be detrimental to or injurious to the public health, public safety, or character of the surrounding area." Trempealeau County Zoning Ordinance § 10.04(5)(a). The Trempealeau County Board of Supervisors set forth several factors to guide the Committee's inquiry into the public health, public safety, and character of the surrounding area. Trempea-leau County Zoning Ordinance § 10.06(6). See ¶ 39, supra.
¶ 93. Because AllEnergy applied for a conditional use permit to open and operate a non-metallic mineral mine, it also had to satisfy the standards the Trempealeau County Board of Supervisors established for non-metallic mineral mining, including the wise use of natural resources, aesthetics, the market value of land, and the legitimate interests of properties in the vicinity. See Trempealeau County Zoning Ordinance Chapter 13 (Non-metallic Mining); ¶¶ 43-45, supra.
¶ 94. Having set forth the substantial evidence test and the provisions of the county ordinance governing the standards and factors that the Trempealeau County Environment & Land Use Committee must consider, we examine the record to determine whether substantial evidence exists in the record to support the Committee's denial of AllEnergy's application for a conditional use permit.
¶ 95. AllEnergy has the burden of proof (persuasion) to demonstrate satisfaction of the criteria for a conditional use permit. Trempealeau County Zoning *374 Ordinance § 10.04(5)(c). The Trempealeau County Environment & Land Use Committee is directed to deny an application for a conditional use permit if the application does not meet any of the conditional use or non-metallic mineral mining standards. Trempealeau County Zoning Ordinance § 10.04(5)(c).[37] If substantial evidence supports any of the Committee's reasons for denying AllEnergy's application pursuant to the criteria in the ordinance, the court will affirm the Committee's decision.[38] We conclude that substantial evidence supports the reasons expressed by the members of the Committee for denying AllEnergy's application for a conditional use permit.
¶ 96. The court of appeals aptly synthesized the Trempealeau County Environment & Land Use Committee's reasons for denying AllEnergy's application for a conditional use permit. The Committee denied AllEnergy's application for four primary reasons:
(1) AllEnergy's plan was "rushed," "incomplete," and had been modified between the time of the plan's preliminary review and presentation at the public hearing;
(2) The proposed mine raises environmental concerns;
*375 (3) The proposed mine would change the landscape and would have adverse effects on wildlife and recreational opportunities available to residents and tourists; and
(4) The proposed mine raised health concerns and would result in changes in local culture and conditions.
¶ 97. The court of appeals reviewed whether substantial evidence supports the first reason for denying the permit. We do not. We look to the other primary reasons, summarized above, beginning with whether substantial evidence supports denying the application on the ground that the project raised environmental concerns, including the condition of Trout Run Creek, water quality, flooding, and wetlands.
¶ 98. Marlys Kolstad opined that the proposed mine on the banks of Trout Run Creek would endanger this Class II trout stream and tributary of the Trem-pealeau River. She explained that a 2014 report[39] noted that the stream was on the verge of no longer being able to sustain healthy populations of trout. The Creek's impairment was caused by "run-off from uplands and barnyards, [which] continuéis] to degrade habitat conditions," and with the "external draining associated with frac sand mining, sediment can be carried into the creek causing further damage to the health of this trout stream."
¶ 99. Building the proposed mine on wetlands next to Trout Run Creek worried Noah Slaby, an Arcadia resident with two young children and two properties bordering the proposed site of the mine:
*376 Of all the possible negative effects of this project, the location of the rail spur and processing facility is the most disturbing with its close proximity to a registered trout stream, river, and wetland. This river bottom is also very prone to flooding and with my own experience with farming and pasturing cattle in this low lying area, less than a mile away[,] I can't imagine trying to control piles of sand, overburden and containment ponds when such common flooding occurs.. .. [Wjater quality is dependent upon wetlands to purify the water we drink and to filter out impurities that exist in our water from field run-off and other human pollutants.
¶ 100. Concern about the proposed mine's potential to aggravate flooding in a flood-prone area was repeated time and time again to the Committee. For instance, Henry Schultz opposed allowing a mine "whose process and loading facilities are to be located within a flood prone area. [Because] [h]igh water won't be an unusual occurrence; it will be a recurrent problem."
¶ 101. Indeed, Pat and Mary Slaby, who own a farm a mile downstream from the site of the proposed mine, reiterated the flooding concern in an e-mail that was read into the record: "This past year alone the river bridge crossing had been closed on at least three different occasions .... We have been battling high water in our fields, roads, and basements and each year it seems to get worse." According to the Slabys, filling in these upstream wetlands would be akin to "giving up our greatest asset on battling flood water."
f 102. Kathy Lockington explained that a neighboring mine's development has caused numerous water quality problems. For example, since the sand mine was built, she has spent $550 on water quality testing that looks for both dust and polyacrylamides (one of *377 the chemicals used in frac sand mining). She explained: "Our water softener has sand. The guy came and said you have sand in your filter. I have drawn out water and if you set it in a white bucket, the sand is in there."
¶ 103. Clearly, the Trempealeau County Environment & Land Use Committee had substantial evidence on which to conclude that the proposed mine raises environmental concerns and would have an adverse impact upon "surface water drainage, water quality and supply," factors the Trempealeau Zoning Ordinance required the Committee to consider.
¶ 104. Turning to the effect of the mine on the landscape, wildlife, and recreational opportunities, Abby Johnson's e-mail read into the record stated that wetlands are "very important ecosystems that need protection from developments." The wetlands were described as seasonal home to "[v]arious species of waterfowl... as their breeding ground." "A rail spur would decrease the livability and functionality of these unique ecosystems that are important for maintaining a diverse population of waterfowl and plant species."
¶ 105. The record also demonstrates that placing a sprawling, 550-acre frac sand mine among Trempea-leau County's rolling hills would change the landscape. The Trempealeau County Environment and Land Use Committee had sufficient evidence to conclude that the project would be "detrimental to or injurious to the . .. character of the surrounding area," and would have an adverse effect on "aesthetics, including but not limited to scenic beauty and the conservation of natural resources of outstanding quality or uniqueness." Trempealeau County Zoning Ordinance §§ 10.04(5)(a), 13.03(3)(a)(5).
*378 ¶ 106. Aesthetic concerns, that is, changes to the landscape, were raised repeatedly by members of the public.[40] Duane and Theresa Matelski reported that they "marvel everyday at the breathless beauty in the ridges and valleys that make up our County. It saddens us greatly that this unique beauty is so quickly disappearing, and the eyesore of yet another mine dots what was once a beautiful vista here in Trempealeau County."
f 107. Henry Schultz noted the aesthetic degradation inherent to the project: AllEnergy's plan called for "extracting] sand from several sites over time that are not connected except by a network of conveyors that greatly expands the footprint of the whole operation . . . sprawling over the landscape."
¶ 108. Noah Slaby stated: "This driftless area has brought people here to visit and live. What incentive do young families have to stay in this area when the very values and landscape that they love continue to be compromised?" He noted that AllEnergy's representative even "commented on what a beautiful area this is, but yet he is here to change the topography of the land."
¶ 109. To some residents, the proposed mine would result in changes in local culture and conditions. The mine would eliminate their pastoral lifestyles. For example, Diane Waniorek's letter read into the record expressed her concern that she "will no longer be able *379 to maintain the farm that has been in [her] family for over 100 years." She explained that "[h]aving a sand mine so close to my home will decrease the property value and quality of life . . . [and] may force my family to abandon land on which [it] has lived for over a century."
f 110. Clearly, the Trempealeau County Environment & Land Use Committee had substantial evidence in the record to support its conclusion that the proposed mine would result in changes in local culture and aesthetics.
¶ 111. Finally, many people who lived near existing frac sand mines testified about health problems caused by sand and dust.
¶ 112. Bobbi and Richard Halvorsen's e-mail read into the record described problems that their family faced from the dust caused by a frac sand mine. They eventually had to move away from the mine because their daughter had "asthma which grew progressively worse," Bobbi Halvorsen "lived with a constant headache," and their "five year old [had] continuing problems with allergies. . . ." All of these health problems disappeared once the family moved away from the mine.
¶ 113. Lois Taylor, a registered nurse, reiterated these health concerns in an e-mail that was read into the record at the hearing. She stated that she believes "there needs to be a land use impact study focusing on health risks related to air and water quality. . . ." Sherie Sacia, a health worker, expressed concern in an e-mail read into the record that the health impacts of frac sand mining are unknown and that it is "[b]etter to slow the process down until we are sure of any health impacts. All of our famil ties'] health depends on you."
*380 ¶ 114. Once again, health concerns—ranging from anecdotal to professionally based—were substantial evidence on which the Trempealeau County Environment & Land Use Committee could base its denial of AllEnergy's application. The Committee is required by the ordinance to analyze a proposal for non-metallic mineral mining in light of the "impacts ... on the general health, safety and welfare of the public." Trempealeau County Zoning Ordinance § 13.01.
¶ 115. The Trempealeau County Environment & Land Use Committee's decision must be upheld if any reason set forth in the ordinance for denying the permit is supported by substantial evidence. Surely, a reasonable person could conclude that the public comments at the hearing were relevant, probative evidence, providing substantial evidence in the record to support the Committee's decision to deny AllEnergy's application because the proposed mine raises environmental concerns, changes the landscape, would have adverse effects on wildlife and recreational opportunities, would result in changes in local culture and aesthetics, and raises public health concerns.
¶ 116. AllEnergy contends, however, that its experts had an adequate response to each and every one of the concerns expressed by the members of the Trempealeau County Environment & Land Use Committee who voted against the application.
f 117. AllEnergy's arguments amount to asking this court to reweigh the evidence. Reweighing the evidence is not part of the substantial evidence test or the role of this court.[41] The Committee need not have *381 accepted an expert's testimony. It had the discretion to weigh the expert's testimony against other evidence in the record. Expert testimony, for example, cannot allay aesthetic concerns raised by a large open mine site in a beautiful part of the state.
¶ 118. On review of the record, we conclude that substantial evidence exists to support the Trempea-leau County Environment & Land Use Committee's decision to deny AllEnergy's application for a conditional use permit.
IV
¶ 119. Finally, we address AllEnergy's request that the court "adopt a new doctrine that where a conditional use permit applicant has shown that all conditions and standards, both by ordinance and as devised by the zoning committee, have been or will be met, the applicant is entitled to the issuance of the permit." As we explained previously, this request is based on AllEnergy's assertion that AllEnergy satisfied all the specific conditions in the ordinance as a matter of law and cannot be required to satisfy subjective, generalized conditions and standards in the ordinance.
f 120. Quoting Rathkopf's The Law of Zoning and Planning, AllEnergy proposes the following rule: "If the administrative body finds compliance with the *382 standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions which the agency may impose by reason of the nature, location, and incidents of the particular use."[42]
f 121. AllEnergy argues that other states follow this rule, but provides very little justification for our discarding precedent beyond the following cursory statement: "The rationale for recognition of the right has been that a decision to deny a CUP [conditional use permit] is arbitrary where the applicant has met the ordinance standards and where conditions can be adopted to address additional potentially-adverse impacts."[43]
f 122. We discussed AllEnergy's "entitlement" argument previously in our discussion of whether the Trempealeau County Environment & Land Use Committee kept within its jurisdiction in denying AllEner-gy's application for a conditional use permit. We declined to adopt AllEnergy's argument. See Part II, ¶¶ 50-54, supra.
¶ 123. Less than a decade ago, the court in Town of Rhine v. Bizzell, 2008 WI 76, 311 Wis. 2d 1, 751 N.W.2d 780, rejected—on the merits—a nearly identical rule as the one AllEnergy urges in the instant case. In Bizzell, 311 Wis. 2d 1, ¶ 56, the court concluded that the entitlement argument was "without merit."
¶ 124. In elucidating the difference between permitted uses and conditional uses, the Bizzell court explained that "[e]ven though conditional uses may be *383 authorized pursuant to the ordinance, that does not render them uses as of right." Bizzell, 311 Wis. 2d 1, ¶ 56 (citing Gail Easley, Conditional Uses: Using Discretion, Hoping for Certainty, American Planning Association Zoning Practice, May 2006, at 8).[44] Rather, the Bizzell court further explicated that "[conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." Bizzell, 311 Wis. 2d 1, ¶ 20 (citing State ex rel. Skelly Oil Co. v. Common Council, City of Deerfield, 58 Wis. 2d 695, 701, 207 N.W.2d 585 (1973)). "[U]ses subject to a conditional use permit are necessary to the community, but because they often represent uses that may be problematic, their development is best governed more closely rather than as of right." Bizzell, 311 Wis. 2d 1, ¶ 24. Whether a conditional use can be sanctioned depends on whether the use meets the criteria set forth in the governing ordinance.
¶ 125. Looking to the language of the Town of Rhine ordinance governing conditional uses in Bizzell, the Bizzell court concluded that the Town of Rhine ordinance's language in and of itself foreclosed an entitlement argument. The standards for "obtaining a conditional use permit [were] subject to significant interpretation." Bizzell, 311 Wis. 2d 1, ¶ 58.
*384 ¶ 126. For example, the ordinance at issue in Bizzell directed the zoning board to consider whether a conditional use permit would "preserve natural growth and cover and promote the natural beauty of the township." Bizzell, 311 Wis. 2d 1, ¶ 58. This standard, and others like it, were "simply not specific enough that one can reasonably say that any use as of right exists . . . ." Bizzell, 311 Wis. 2d 1, ¶ 58.
f 127. Additionally, nothing in the Bizzell ordinance stated that "[i]f all requirements are met, the conditional use permit shall be granted." Bizzell, 311 Wis. 2d 1, ¶ 59.
¶ 128. AllEnergy faces the same roadblock in the instant case. The Trempealeau County ordinance uses language similar to that in Bizzell to set forth factors for the Trempealeau County Environment & Land Use Committee to consider. See, e.g., Trempealeau County Zoning Ordinance § 10.04(5)(b)15. ("adversely affect[s] the natural beauty"), § 13.01 ("wise use of natural resources"). No language in the Trempealeau County Zoning Ordinance guarantees that a conditional use permit shall be granted if all requirements are met.
f 129. AllEnergy has failed to provide a compelling reason for this court to depart from long-standing precedent. We shall therefore adhere to stare decisis and reaffirm Bizzell's rejection of AllEnergy's "entitlement" approach to conditional use permits.
V
¶ 130. In conclusion, we affirm the decision of the court of appeals. On certiorari review, we accord the decision of the Trempealeau County Environment & Land Use Committee a presumption of validity and correctness. AllEnergy has not successfully rebutted that presumption. The Trempealeau County Environ *385 ment & Land Use Committee kept within its jurisdiction in denying AllEnergy's application for a conditional use permit. It relied on standards that the Trempealeau County Board of Supervisors adopted and explicitly directed the Committee to consider. The Committee's denial of AllEnergy's application was based on substantial evidence in the record.
¶ 131. Finally, we reject AllEnergy's entitlement approach to conditional use permits. This approach has no basis in our precedent or the language of the Trem-pealeau County ordinance; it has been rejected previously by the court. Without a compelling reason, and none has been given, the court will not overturn settled law.
¶ 132. For the reasons set forth, we affirm the decision of the court of appeals.
By the Court.—The decision of the court of appeals is affirmed.

 Although four justices agree with the mandate of this opinion that the decision of the court of appeals is affirmed, only Justice Ann Walsh Bradley joins this opinion (which makes it the opinion of two justices). Justice Annette K. Ziegler (joined by Chief Justice Patience D. Roggensack) joins the mandate and writes separately in concurrence. Justice Daniel Kelly (joined by Justice Michael J. Gableman and Justice Rebecca Grassl Bradley) dissents. This opinion is a lead opinion because four justices do not agree with or join its reasoning.
As Justice Ann Walsh Bradley recently explained in State v. Weber, 2016 WI 96, ¶ 83 n.1, 372 Wis. 2d 202, 887 N.W.2d 554 (Ann Walsh Bradley, J., dissenting), although "the term 'lead' opinion ... is undefined in our Internal Operating Procedures, its use here is consistent with past description. We have said 'that a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices.'" (quoting State v. Lynch, 2016 WI 66, ¶ 143, 371 Wis. 2d 1, 885 N.W.2d 89 (Abrahamson & Ann Walsh Bradley, JJ., concurring in part and dissenting in part) (citing Hoffer Props., LLC v. DOT, 2016 WI 5, 366 Wis. 2d 372, 874 N.W.2d 533)).

 AllEnergy Corp. v. Trempealeau County Env't & Land Use Comm., No. 2015AP491, unpublished slip op. (Wis. Ct. App. May 10, 2016).

 Briefs were submitted in this court by amici curiae as follows: Joint brief of CSI Sands (Wisconsin) LTD., D/B/A Canadian Silica Industries, Superior Silica Sands LLC, Mississippi Sand LLC, and High Country Sand LLC; Wisconsin Realtors Association and Wisconsin Builders Association; and Wisconsin Counties Association and Wisconsin Towns Association.

 Brief of Petitioners-Appellants-Petitioners (AllEnergy) at vi (emphasis added).
AllEnergy's petition for review stated the issues somewhat differently as follows (emphasis added):
I. Does a conditional use permit ("CUP") applicant have a property right of entitlement to issuance of a CUP when a county zoning committee adopts 37 specific conditions of approval for a CUP, but then denies it based on generalized quasi-legislative concerns?
II. Do unsubstantiated public comments on the possible negative impacts of a non-metallic mine constitute substantial evidence upon which to base a CUP denial?
III. Should the court adopt a new doctrine that where a CUP applicant has shown that all conditions and standards, both by ordinance and as devised by the zoning committee, have been or will be met, the applicant is entitled to the issuance of the permit?
IV. Did [the Environment & Land Use Committee] exceed its jurisdiction by denying a CUP based upon generalized concerns, reflecting the exercise of policy-based, quasi-legislative authority by a committee whose members are appointed, not elected?
V. In addition to violating the judicial notice statute, did it violate the due process and equal protection rights of the CUP applicant for the courts below to refuse to take mandatory judicial notice of certain governmental documents?
This court's order granting AllEnergy's petition for review limited review to issues II, III, and IV, above.

 See State ex rel. Shelly Oil Co. v. Common Council, City of Delafield, 58 Wis. 2d 695, 700-701, 207 N.W.2d 585 (1973) (footnote omitted):
Conditional uses or as they are sometimes referred to, special exceptions uses, enjoy acceptance as a valid and successful tool of municipal planning... .[A]s flexibility devices, which are designed to cope with situations where a particular use, although not inherently inconsistent with the use classification of a particular zone, [conditional uses] may well create special problems and hazards if allowed to develop and locate as a matter of right in [a] particular zone.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.
"Certiorari is used to test the validity of decisions made by administrative or quasi-judicial bodies." Acevedo v. City of Kenosha, 2011 WI App 10, ¶ 8, 331 Wis. 2d 218, 793 N.W.2d 500.

 See, e.g., Lamar Cent. Outdoor, Inc. v. Bd. of Zoning Appeals of City of Milwaukee, 2005 WI 117, ¶ 16, 284 Wis. 2d 1, 700 N.W.2d 87; Edward Kraemer & Sons, Inc. v. Sauk Cty. Bd. of Adjustment, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994); *341 Sills v. Walworth Cty. Land Mgt. Comm,., 2002 WI App 111, ¶ 6, 254 Wis. 2d 538, 648 N.W.2d 878.

 Oneida Seven Generations Corp. v. City of Green Bay, 2015 WI 50, ¶ 41, 362 Wis. 2d 290, 865 N.W.2d 162 (citing Ottman v. Town of Primrose, 201 WI 18, ¶ 35, 332 Wis. 2d 3, 796 N.W.2d 411).
In challenging whether the evidence was such that the Trempealeau County Environment & Land Use Committee might reasonably make the determination in question, courts apply the substantial evidence test. See Part III, infra.

 A determination of a local governmental entity represents its will and not its judgment when its action is "arbitrary, oppressive, or unreasonable." Snyder v. Waukesha Cty. Zoning Bd. of Adj., 74 Wis. 2d 468, 475-76, 247 N.W.2d 98 (1976) (An action is "arbitrary o[r] capricious if it is unreasonable or without a rational basis."); see also Olson v. Rothwell, 28 Wis. 2d 233, 239, 137 N.W.2d 86 (1965) ("Arbitrary or capricious action on the part of an administrative agency occurs when it can be said that such action is unreasonable or does not have a rational basis. . . . and [is] not the result of the 'winnowing and sifting1 process.") (internal citations omitted); State ex rel. Harris v. Annuity & Pension Bd., Emp. Ret. Sys. of City of Milwaukee, 87 Wis. 2d 646, 651-52, 275 N.W.2d 668, 671 (1979) (the fourth certiorari criterion, whether the evidence was such that the governmental entity might reasonably make the order based on evidence, controls the third criterion); see also Williams v. Housing Auth. of City of Milwaukee, 2010 WI App 14, ¶ 10, 323 Wis. 2d 179, 779 N.W.2d 185 (a challenge under criteria three and four of a certiorari review requires a court to determine whether the decision is founded on insufficient evidence).

 Oneida Seven Generations Corp., 362 Wis. 2d 290, ¶ 42.

 For a more in-depth discussion of fracking and frac sand, see Wisconsin Department of Natural Resources, Industrial Sand Mining in Wisconsin, June 2016, http://dnr.wi.gov/topic/ EIA/documents/ISMSA/ISMSA.pdf (last visited May 22, 2017).

 See Trempealeau County Zoning Ordinance § 2.03(2).

 The Department of Land Management deemed the application complete days before the County adopted a one-year moratorium on permitting new frac sand mines on August 30 (effective September 1, 2013). The County adopted the moratorium in order to study the health and environmental effects of the recent boom in frac sand mining. Because AllEnergy submitted a complete application before September 1, the moratorium did not apply to AllEnergy.

 Under our cases, no requirement exists that a written decision be prepared, but, for meaningful review, a reviewing court must be able to discern from the record or the transcript of the proceedings before the board the reasons for the denial of the application for a conditional use permit. See Lamar Cent. Outdoor, 284 Wis. 2d 1, ¶¶ 31—35.

 AllEnergy relies on Maryland cases adopting this standard. See, e.g., Mossburg v. Montgomery Cty., 666 A.2d 1253 (Md. Ct. App. 1995).

 Kimberly-Clark Corp. v. Pub. Serv. Comm'n of Wis., 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983) (citing Elroy-Kendall-Wilton Schs. v. Coop. Educ. Serv., 102 Wis. 2d 274, 278, 306 N.W.2d 89 (Ct. App. 1981)). See also Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶ 14, 270 Wis. 2d 318, 334-35, 677 N.W.2d 612 ("It is axiomatic that because the legislature creates administrative agencies as part of the executive branch, such agencies have only those powers which are expressly conferred or which are necessarily implied by the statutes under which it operates.") (internal quotation marks omitted).

 See also Town of Rhine v. Bizzell, 2008 WI 76, ¶¶ 55-57, 311 Wis. 2d 1, 751 N.W.2d 780 (quoting Primeco Pers. Commc'ns, L.P. v. City of Mequon, 242 F. Supp. 2d 567, 576 (E.D. Wis. 2003)).

 Delta Biological's argument, which the court of appeals dismissed, was that "a presumption arises that [a conditional] use serves the public interest from the fact that the legislature permits it, and the special use itself, therefore, presumes a legislative determination that a public need for the use exists." Delta Biological Res., Inc. v. Bd. of Zoning Appeals of the City of Milwaukee, 160 Wis. 2d 905, 911—12, 467 N.W.2d 164 (Wis. App. 1991).

 See Daniel R. Mandelker & Allan Wolk, Land Use Law § 6.53 (6th ed. 2016); 2 Patricia E. Salkin, American Law of Zoning §§ 14:1, 14:6 (6th ed. 2016); Rathkopf's The Law of Zoning and Planning §§ 60:5, 60:9, 60:10, 61:5-:8, 61:34-:38 (2016).

 "The principle of stare decisis applies to published decisions of the court of appeals, and stare decisis requires us to follow court of appeals precedent unless a compelling reason exists to overrule it." Wenke v. Gehl Co., 2004 WI 103, ¶ 21, 274 Wis. 2d 220, 682 N.W.2d 405 (citations omitted). See also State v. Ziegler, 2012 WI 73, ¶ 114, 342 Wis. 2d 256, 816 N.W.2d 238; Wis. Stat. § 752.41(2) ("Officially published opinions of the court of appeals shall have statewide precedential effect.").

 "When an ordinance vests discretionary power in administrative officials it must prescribe standards to guide their action." State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis. 2d 1, 7, 130 N.W.2d 304 (1964).

 Bizzell, 311 Wis. 2d 1, ¶ 26 (citing State ex rel. Am. Oil Co. v. Bessent, 27 Wis. 2d 537, 546, 135 N.W.2d 317 (1965)).

 The phrase "special exception permit" has been used interchangeably with "conditional use permit." State ex rel. Skelly Oil Co. v. City of Delafield, 58 Wis. 2d 695, 700, 207 N.W.2d 585 (1973).

 Criteria to be considered such as the following appear in the statutes governing the granting of applications for various permits: "enjoyment of natural scenic beauty and environmental quality," "will not endanger life, health or property," "reasonable needs of the public," "public interest," "not have undue adverse impact on other environmental values such as, but not limited to, ecological balance, public health and welfare, .. . the aesthetics of land and water and recreational use" See, e.g., Wis. Stat. §§ 31.06(3), 31.08, 196.491(3)(d).

 In Smith v. City of Brookfield, 272 Wis. 1, 7-10, 74 N.W.2d 770 (1956), the court held that a general statement of purpose contained in the preamble to the town's comprehen *365 sive zoning ordinance provided sufficient guidance. The stated purpose was "to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the township, to avoid congestion in the public streets and highways and to promote the public health, safety, comfort, morals, and welfare, all in accordance with a comprehensive zoning plan . . .." (Emphasis in original.)

 See also Town of Grand Chute v. U.S. Paper Converters, Inc., 229 Wis. 2d 674, 686, 600 N.W.2d 33 (Ct. App. 1999) (concluding that "a town, regulating development within its boundaries, must create an ordinance [with enough specificity] to give developers reasonable notice of the areas of inquiry that the town will examine in approving or disapproving proposed sites.").

 Gehin v. Wis. Group Ins. Bd., 2005 WI 16, ¶ 6 nn.5-6, 278 Wis. 2d 111, 692 N.W.2d 572 (citing State ex rel. Harris & Annuity Pension Bd., 87 Wis. 2d 646, 652, 275 N.W.2d 668 (1979)).

 Oneida Seven Generations Corp., 362 Wis. 2d 290, ¶ 43.
See also Gehin, 278 Wis. 2d 111, ¶ 48 ("Substantial evidence has been defined in the case law as "that quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion.") (footnotes and citations omitted).

 Sills v. Walworth Cty. Land Mgt., 2002 WI App 111, ¶¶ 10-11, 254 Wis. 2d 538, 648 N.W.2d 878 ("We must uphold the Committee's decision so long as it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion.").

 Delta Biological Res., Inc. v. Bd. of Zoning Appeals of City of Milwaukee, 160 Wis. 2d 905, 910-915, 467 N.W.2d 164 (Ct. App. 1991).

 See Sills, 254 Wis. 2d 538, ¶ 11.

 On certiorari review, the substantial evidence test is the same substantial evidence test used for the review of administrative determinations under Wis. Stat. ch. 227. Gehin, 278 Wis. 2d 111, ¶ 6.
*368 The statute governing the admission of evidence before administrative agencies in contested cases, Wis. Stat. § 227.45(1), states that an agency is not bound by common law or statutory rules of evidence and adopts a "reasonable probative value test" for admission of testimony:
[A]n agency or hearing examiner shall not be bound by common law or statutory rules of evidence. The agency or hearing examiner shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony.... Basic principles of relevancy, materiality and probative force shall govern the proof of all questions of fact.

 Substantial evidence, defined similarly to the Wisconsin definition, is used in case law of other jurisdictions. See, e.g., *371 Ocean View Estates Homeowners Ass'n v. Montecito Water Dist., 116 Cal. App. 4th 396, 402 (2004) (opinions and observations about aesthetics can constitute substantial evidence); State of Missouri ex rel. Karch v. Camden Co., 302 S.W.2d 754 (Mo. Ct. App. 2010) (lay witnesses' testimony that increased boat traffic endangered public health or safety and would destroy nature of area constituted substantial evidence); City of Las Vegas v. Laughlin, 893 P.2d 383, 385 (Nev. 1995) (public concerns over increased traffic where children walk to school and preserving residential nature of neighborhood constituted substantial evidence); BellSouth Mobility v. Miami-Dade Cty., 153 F. Supp. 2d 1345, 1354 (S.D. Fla. 2001) (decision on proposed cellular facility based on residents' aesthetic concerns was based on substantial evidence).

 See Clark v. Waupaca Cty. Bd. of Adjustment, 186 Wis. 2d 300, 305, 519 N.W.2d 782 (1993) (citing Van Ermen v. DHSS, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978) ("As the substantial evidence test is highly deferential to the board's findings, we may not substitute our view of the evidence for that of the board when reviewing the sufficiency of the evidence on certiorari.")).

 Kapischke v. Cty. of Walworth, 226 Wis. 2d 320, 328, 595 N.W.2d 42 (Ct. App. 1999).

 Roberts v. Manitowoc Cty. Bd. of Adjustment, 2006 WI App 169, ¶ 28, 295 Wis. 2d 522, 721 N.W.2d 499 ("[I]t is not 'substantial concerns' that will overcome the Board's decision, but rather the absence of substantial supporting evidence.").

 "At all times the burden of proof to demonstrate satisfaction of these criteria remains with the applicant." See also Delta Biological, 160 Wis. 2d at 910-12 ("The burden of proof at all times remains with the applicant.").

 Clark v. Waupaca Cty. Bd. of Adjustment, 186 Wis. 2d 300,304, 519 N.W.2d 782 (Ct. App. 1994) ("[I]fwe conclude that any one of the board's reasons for denying the variances at issue passes certiorari review, we affirm without commenting on the board's other reasons."); see also Trempealeau County Zoning Ordinance § 10.04(5) (the Committee may deny the application if it does not satisfy any of the ordinance's criteria).

 The reference is to a publicly available publication of the Wisconsin Department of Natural Resources.

 See VoiceStream Minneapolis, Inc. v. St. Croix Cty., 342 F.3d 818, 831 (7th Cir. 2003) ("Indeed, every circuit to consider the issue [of telecommunications siting] has determined that aesthetics may constitute a valid basis for denial of a wireless permit if substantial evidence of the visual impact of the tower was before the board."). See also Village of Menomonee Falls v. DNR, 140 Wis. 2d 579, 607, 412 N.W.2d 505 (Ct. App. 1987).

 For example, AllEnergy argues that its expert testimony rebutted public comments regarding runoff concerns. "AllEn-ergy's ecologist testified that the project would minimize and improve 'the current conditions by controlling runoff and storm *381 water through construction of storm water retention basin[s] and infiltration basins as well.'" Brief of Petitioners-Appellants-Petitioners (AllEnergy) at 38. The Trempealeau County Environment and Land Use Committee apparently was not persuaded by AllEnergy's expert. The Committee, instead, opted to give more weight to the reports of members of the public who lived near the proposed mine site.

 Brief of Petitioners-Appellants-Petitioners (AllEnergy) at 45 (quoting Rathkopf § 61:37 at 61-99) (emphasis added).

 Brief of Petitioners-Appellants-Petitioners (AllEnergy) at 48.

 See also Bizzell, 311 Wis. 2d 1, ¶ 59:
[W]hile discussing rules that generally govern conditional uses, Anderson's American Law of Zoning states, '[t]he designation of a use in a zoning district as a conditional use does not constitute an authorization or assurance that such use will be approved.' 5 Alan C. Weinsten, Anderson's American Law of Zoning, § 34.23, at 573 (4th ed. 1997). While perhaps not dispositive, this assertion casts doubt on the Town of Rhine's entitlement argument.

 The dissent suggests it is improper to state that the disposition of this case is in some way tied to the fact that this appeal involves local decision-making. The dissent fails to recognize that the correct disposition of this case depends *387 largely on the limited and deferential nature of our certiorari review—a standard of review applied in part because we pass upon the decision of a local governmental entity. It is recognized, for example, that "[a] certiorari court may not substitute its view of the evidence for that of the municipality." Ottman v. Town of Primrose, 2011 WI 18, ¶ 53, 332 Wis. 2d 3, 796 N.W.2d 411. I of course agree that the Committee, like any other governmental unit, must conduct itself according to the law. But no one disputes, for instance, that the Committee "proceeded on a correct theory of law"; that prong of certiorari review was not invoked on this appeal. To say that the local nature of the issues in this case bears upon the outcome is consistent with our precedent and thus upholds the rule of law rather than thwarts it.