# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP1618

†Petition for Review Filed

Complete Title of Case:

**STATE OF WISCONSIN EX REL. NUDO HOLDINGS, LLC,**

  **PETITIONER-APPELLANT,†**

  **V.**

**BOARD OF REVIEW FOR THE CITY OF KENOSHA,**

  **RESPONDENT-RESPONDENT.**

---

| | |
|---|---|
| Opinion Filed: | November 25, 2020 |
| Submitted on Briefs: | June 26, 2020 |

---

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Davis, J. |
| Concurred: | |
| Dissented: | Reilly, P.J. |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Anthony Nudo* of *Guttormsen, Terry & Nudo, LLC*, of Kenosha. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *Robert I. DuMez* of *Alia, Dumez & McTernan, S.C.*, of Kenosha. |

COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1618**

STATE OF WISCONSIN

Cir. Ct. No.  2018CV896

IN COURT OF APPEALS

---

STATE OF WISCONSIN EX REL. NUDO HOLDINGS, LLC,

  PETITIONER-APPELLANT,

 V.

BOARD OF REVIEW FOR THE CITY OF KENOSHA,

  RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Kenosha County: ANTHONY G. MILISAUSKAS, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1    DAVIS, J.  The question before us in this tax assessment case is whether vacant land slated for residential development, on which the landowner made minimal efforts to farm naturally growing crops, was correctly classified as residential, rather than agricultural.  Nudo Holdings, LLC (Nudo) appeals from a

trial court order affirming the decision of the Board of Review for the City of Kenosha (the Board). The Board decision, in turn, upheld the city assessor's classification of Nudo's property as residential. We conclude that the Board correctly applied Wisconsin law on property classification for tax assessment purposes. We further conclude that there was sufficient evidence supporting the Board's determination that the land was properly classified as residential. Accordingly, we affirm.

## BACKGROUND

¶2 In September 2017, Nudo paid $100,000 for an 8.9 acre parcel of land in the City of Kenosha. The parcel was tax-exempt at the time of purchase but was later assessed at $10,000 per acre, having been classified as residential for 2018 tax purposes. Nudo objected to the assessment, arguing that the parcel should have been classified as agricultural because that was its primary use. *See* WIS. STAT. § 70.32(2)(c)1g (2017-18)[1] (the assessor shall classify as agricultural land "that is devoted primarily to agricultural use").

¶3 The Board held a hearing on the matter and sustained the assessment, finding that the parcel was properly classified as residential and not agricultural. Nudo brought this action, challenging the Board's determination by way of certiorari review. The trial court reversed, concluding that the Board had incorrectly required the parcel to have a "business purpose" in order to qualify as agricultural land, contrary to the supreme court's recent decision in *State ex rel. Peter Ogden Family Trust of 2008 v. Board of Review*, 2019 WI 23, ¶32, 385 Wis. 2d 676, 923 N.W.2d 837 (land does not need to be farmed for a "business purpose" in order to

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version.

be classified as "agricultural land" for property tax purposes). The court remanded to the Board to reconsider Nudo's appeal in light of *Ogden*. On remand, the Board took into account testimony and other evidence from both Board proceedings, which are as follows.

¶4    Anthony Nudo testified as owner of Petitioner-Appellant Nudo (to avoid confusion, we refer to the witness as "Mr. Nudo"). Mr. Nudo purchased the property "[t]o eventually develop it" into subdivided residential lots. At the time of assessment, however, the parcel remained in an "unimproved" state, with "no habitable structures … sewer or water [on] the property." Mr. Nudo testified that residential construction would be "impossible" without "substantial public improvements."

¶5    Mr. Nudo explained that even though the long-term goal was residential development, the property's current use was agricultural. According to Mr. Nudo, "Nudo Farms" (as he labeled it) contained "a significant walnut grove." He did not plant the walnut trees—they were there when he purchased the property. To protect the trees, however, Mr. Nudo did purchase and plant a "windbreak packet" of small trees. In addition to the walnut trees, "Christmas trees [were] growing scattered at the site." Mr. Nudo testified that he had cut and maintained trails to connect and provide access to the Christmas trees and walnut grove. Aside from these actions, Mr. Nudo did not point to any agricultural practices taking place on the property. For example, he stated that the trees were not planted in rows and that there was "not much" tilling; he did not describe any fertilization, pruning, soil management, pest control, or other actions to enhance growth or yield. Mr. Nudo further admitted that he had not harvested any Christmas tree timber and had not commercially harvested any walnuts. He and his wife did harvest some walnuts on

their own; however, Mr. Nudo provided few details on this point.[2]  He gave the harvested walnuts to his mother, who passed them out as gifts to her hairdressing clients.

¶6     Mr. Nudo testified that Nudo Farms was registered by the State of Wisconsin as "livestock premises" and was licensed by the City of Kenosha for the keeping of up to twenty-five chickens.  Mr. Nudo, however, only "stored" chickens on the property once, temporarily, while his cousin was cleaning out their coop— and in any case, this was sometime after 2017, the relevant tax assessment period.  He also obtained permits from Kenosha County to harvest Christmas trees and other timber on the property.  According to Mr. Nudo, these facts, taken together, showed that the parcel should be classified as agricultural, not residential, land.

¶7     Peter Krystowiak, the city assessor, also testified.  Krystowiak acknowledged that Nudo's property was located in an A-2 Agricultural Land Holding District, but he explained that "the key determination" for classification is "[a]ctual use of the property … not location, zoning or other factors."  In any case, the A-2 designation "is really more of a holding zoning" for "parcels that have come in from [neighboring towns and villages] … until a plan is in place for that parcel."  Nudo's property, in fact, was located within the "St. Peters Neighborhood Plan," meaning that the city had slated the location for single-family residential development, in line with Nudo's goals.  As Krystowiak noted:

> Mr. Nudo is looking to pursue having up to 18 lots on this
> parcel, 18 residential lots.  That is allowable.  As long as he

---

[2]  During the Board's first deliberation, one member noted that the walnut harvesting took place on a single day, December 3, 2017, but there is no testimony or evidence to that effect in the record.  It appears that Nudo provided a packet of materials to the Board that is not included in the record, and which possibly contains this and other information on the walnut harvest.  It is undisputed, however, that much of the information that the assessor considered pertinent, such as the yield of walnuts, is unknown.  *See infra*, ¶9.

> follows all the ordinances, as long as he does everything that needs to be done here, according to the neighborhood plan, the city would really have no way to stop him. This neighborhood plan is as good as zoning.

Therefore, Krystowiak classified the property as "residential," based on its likely future use.

¶8 Krystowiak next explained why, in his opinion, the land was not "devoted primarily to agricultural use." He pointed out that land classified as agricultural "shall typically bear physical evidence of agricultural use, such as furrows, crops, fencing or livestock." *See* WIS. ADMIN. CODE § TAX 18.06(1) (July 2018). Krystowiak testified that he did not see any such "physical evidence," or any other indication that the land was being farmed. What he did see on the property were "a few paths" cutting through "extremely heavy underbrush on a majority of this parcel":

> From the sidewalk, this parcel, if you get more than ten to 15 feet off the sidewalk, this is a parcel that brushes up above your knees. So I mean, you could get—literally, I think you could get lost in this nine acres in the city. It's—it's heavy—really heavy.

There was also no evidence of a harvest and "no evidence of livestock being allowed or able to roam free." In short, Krystowiak characterized the parcel as a "raw piece of land," stating, "I don't see any effort, any action, any plan in terms of agricultural. *This is a piece of land that has some things growing on it*." (Emphasis added.)

¶9 Krystowiak further testified that despite his request under the administrative code, Nudo did not provide any additional information, such as the yield of walnuts harvested, that might indicate agricultural use. *See* WIS. ADMIN. CODE § TAX 18.06(1) ("If physical evidence of agricultural use is not sufficient to determine agricultural use, the assessor may request … such information as

5

necessary to determine if the land is devoted primarily to agricultural use."). Specifically, Krystowiak received no information regarding his request for: (1) "a profit and loss statement and/or tax records … which documents agricultural activities, the harvesting of trees and nuts at the parcel"; (2) "[a]ny documentation that substantiates the harvesting of black walnuts and Christmas trees in [20]17"; (3) [a]ny evidence of keeping livestock on the parcel"; (4) "[a]ny evidence of furrows, crops or fencing"; and (5) "[a]ny evidence of agronomic practices defined in the Property Assessment Manual." Krystowiak stated that he did not request this information to verify a commercial or business purpose to Nudo's farming, but rather, because he wanted to "establish whether there was cultivation, whether there was a harvest, whether there was a yield." After remand to the Board, Krystowiak again clarified, "The lack of a business purpose was not the reason why this parcel was denied ag[ricultural] use…. This parcel was denied ag[ricultural] use because it did not fit the statutory definitions of what ag[ricultural] land [and] ag[ricultural] use … are."

¶10 After considering all of the evidence, the Board sustained the assessment. Addressing the trial court's prior concern about the effect of ***Ogden***, the Board explicitly stated that its decision was not based on any "business purpose" requirement but on the fact that the land's use was residential, not agricultural. This time on certiorari review, the trial court affirmed the Board's decision, concluding that the Board "had sufficient basis to affirm the assessor's valuation based on the evidence presented." Nudo appeals from that order.

## DISCUSSION

*Standard of Review and Relevant Law Applicable to Real Property Assessment*

¶11　A brief background of relevant assessment principles will be helpful before we consider Nudo's appeal and the standards governing it. The tax assessor shall annually assess all property according to WIS. STAT. ch. 70 "in the manner specified in the Wisconsin property assessment manual" (WPAM). WIS. STAT. §§ 70.32(1), 70.10. We therefore adhere to the WPAM "absent conflicting law," relying on the guidance therein to supplement the statutes and case law.[3] ***Marathon Petroleum Co. v. City of Milwaukee***, 2018 WI App 22, ¶19, 381 Wis. 2d 180, 912 N.W.2d 117.

¶12　The tax due on a parcel of real property is based on the property's "assessment" or "assessed value"; that is, the "dollar amount assigned to the taxable property … by the assessor for the purpose of taxation." WIS. DEP'T OF REVENUE, WISCONSIN PROPERTY ASSESSMENT MANUAL G-1 (Dec. 2017) (hereinafter, WPAM). The assessor classifies property "on the basis of use" into one of eight categories, including the two classifications at issue here: "agricultural" and "residential." *See* WIS. STAT. § 70.32(2)(a)1., 4. For most of these classes, including residential, assessed value is simply "the full value which could ordinarily be obtained therefor at private sale"—that is, fair market value. Sec. 70.32(1); ***State ex rel. Levine v. Board of Rev.***, 191 Wis. 2d 363, 372, 528 N.W.2d 424 (1995). Our legislature has determined, however, that this standard does not apply to agricultural land. In order "to protect Wisconsin's farm economy and curb urban sprawl," agricultural land is taxed according to its "use-value," or "the value of a property for a specific use." WPAM 14-1; *see also* ***Thoma v. Village of Slinger***, 2018 WI 45, ¶12 n.7, 381 Wis. 2d 311, 912 N.W.2d 56 ("the use-value assessment legislation

---

[3] The Wisconsin Department of Revenue (DOR) annually updates the WPAM. Our decision cites to the 2018 version in effect at the time of Nudo's assessment, but for our purposes that version is identical to the most current (2020) version.

[was] enacted to protect Wisconsin's farmland"). Accordingly, the value of agricultural land is based on "the income that could be generated from [the land's] rental for agricultural use." Sec. 70.32(2r). As might be expected (and seemingly as intended), use-value assessment typically results in a significantly lower comparative tax burden for agricultural property, thus providing a considerable incentive for landowners to seek this classification. *See, e.g.*, **Ogden**, 385 Wis. 2d 676, ¶9.

¶13 Nudo's appeal concerns the residential and agricultural land classifications, and it is important to note a conceptual difference in how these two are defined. Our statutes do not limit the term "residential" to land meeting a particular set of criteria; instead, "'[r]esidential' [land] *includes* any parcel or part of a parcel of untilled land that is not suitable for the production of row crops, on which a dwelling or other form of human abode is located and which is not otherwise classified under this subsection." WIS. STAT. § 70.32(2)(c)3. (emphasis added). Because this definition is nonexclusive and does not easily apply to vacant lands, the WPAM contains guidelines to help the appraiser determine when vacant parcels are residential, based on intended future use. *See* WPAM 12-1; *see also* **West Capitol, Inc. v. Village of Sister Bay**, 2014 WI App 52, ¶¶33-35, 354 Wis. 2d 130, 848 N.W.2d 875. These guidelines will be examined in greater detail below.

¶14 In contrast, the agricultural classification scheme is specifically focused on current use. This is made clear through a series of definitions within the statute and administrative code. Again, **agricultural land** is defined generally in the assessment statute; in pertinent part, it simply means land "devoted primarily to agricultural use." WIS. STAT. § 70.32(2)(c)1g. **Land devoted primarily to agricultural use** is further defined by department of revenue (DOR) rule to mean "*land in an agricultural use for the production season of the prior year*, and not in

a use that is incompatible with agricultural use on January 1 of the assessment year." WIS. ADMIN. CODE § TAX 18.05(4) (emphasis added). Per statute, and as relevant here, **agricultural use** is "defined by the department of revenue by rule."[4] Sec. 70.32(2)(c)1i. The DOR definition of **agricultural use**, in turn, encompasses the three activities Nudo claims as the basis for its agricultural classification: growing Christmas trees, farming walnuts, and keeping chickens.[5] *See* WIS. ADMIN. CODE § TAX 18.05(1).

¶15 Property assessment takes place "as of the close of January 1 of each year." WIS. STAT. § 70.10. "Because the use of agricultural parcels can change frequently, the assessor must review the classification of these parcels" at each assessment cycle. WPAM 4-6. As noted previously, DOR rule outlines this process and, importantly, the criteria that determine whether such classification is appropriate:

> An assessor shall classify as agricultural land devoted primarily to agricultural use. Land devoted primarily to agricultural use shall typically bear physical evidence of agricultural use, such as furrows, crops, fencing or livestock, appropriate to the production season. If physical evidence of agricultural use is not sufficient to determine agricultural use, the assessor may request of the owner … such

---

[4] WISCONSIN STAT. § 70.32(2)(c)1i. further defines "agricultural use" to "include[] the growing of short rotation woody crops, including poplars and willows, using agronomic practices." For purposes of this appeal, we assume that the crops at issue (Christmas and walnut trees) are not "short rotation woody crops." Therefore, our analysis is not dependent on the "agronomic practices" requirement that is a statutory prerequisite to agricultural classification for "short rotation woody crops."

[5] As relevant to this appeal, the DOR defines "agricultural use" to include "[g]rowing Christmas trees" and "[a]ctivities included in subsector 111 Crop Production [and subsector 112 Animal Production], set forth in the North American Industry Classification System (NAICS)." *See* WIS. ADMIN. CODE § TAX 18.05(1)(a)-(c). The WPAM states that walnut farming and poultry/egg production fall within subsectors 111 and 112, respectively, of NAICS. WPAM 14-A-20, 14-A-26 through 28.

> information as is necessary to determine if the land is devoted primarily to agricultural use.

WIS. ADMIN. CODE § TAX 18.06(1).

¶16 We will discuss below additional principles relating to agricultural classification. But to summarize the above authority, a parcel is generally best classified as agricultural where it was used primarily for DOR-specified agricultural activities in the previous year and could support such use in the coming year. Typically, there will be physical evidence of agricultural use; if not, then the taxpayer normally will need to provide additional information "as is necessary" to demonstrate that the land is primarily devoted to agricultural use.

¶17 A taxpayer may object to an assessment by appealing to the appropriate board of review, which shall hold a hearing on the matter. WIS. STAT. § 70.47(7), (8). The board shall presume that the assessment (and, by extension, the underlying classification) is correct. Sec. 70.47(8)(i); **Sausen v. Town of Black Creek Bd. of Rev.**, 2014 WI 9, ¶10, 352 Wis. 2d 576, 843 N.W.2d 39. The taxpayer may rebut this presumption of correctness only with "a sufficient showing" that the assessment is incorrect. Sec. 70.47(8)(i).

¶18 If the board sustains the assessment, the taxpayer may appeal to the trial court. Where, as here, the taxpayer seeks certiorari review pursuant to WIS. STAT. § 70.47(13), then the trial court is limited to a deferential review of the record, as to whether the board: (1) kept within its jurisdiction; (2) acted according to the law; (3) acted arbitrarily, oppressively, or in bad faith; and (4) might reasonably have made the determination in question, given the evidence before it. *See **Nankin v. Village of Shorewood***, 2001 WI 92, ¶¶19-20, 245 Wis. 2d 86, 630 N.W.2d 141; *Levine*, 191 Wis. 2d at 370. Our review mirrors the trial court's, in that we

independently apply the certiorari standard to the record before the board. *See AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.*, 2017 WI 52, ¶9, 375 Wis. 2d 329, 895 N.W.2d 368.

*Application to Nudo's Appeal*

¶19    Nudo's various challenges to the Board proceedings fit into two certiorari categories:  that the Board did not correctly apply the law and that the evidence did not support the Board's decision.  We consider each in turn.

The Board's Decision was According to the Law

¶20    As to Nudo's arguments concerning application of the law, it contends that:  (1) the Board "relied on the lack of at least some business purpose" as the basis for denying agricultural classification, contrary to *Ogden*, 385 Wis. 2d 676, ¶¶32-33; (2) the parcel does not "fall within the ordinary meaning of the term 'residential'" as a matter of law, *see West Capitol, Inc.*, 354 Wis. 2d 130, ¶34; (3) "[t]he Board wrongfully relied on the future use of Nudo Farms, not the use as of January 1, 2018, to sustain" the residential classification; and (4) the Board did not give sufficient weight to the fact that the parcel is zoned "A-2 Agricultural."

¶21    Nudo's "business purpose" challenge arises out of *Ogden*, in which our supreme court held that a business purpose is not required for agricultural classification purposes.  *See Ogden*, 385 Wis. 2d 676, ¶¶32-33.  Following remand from the trial court to rehear this matter in light of *Ogden*, the Board explicitly concluded that "the requirement of a 'business purpose' was not considered … in affirming the valuation by the assessor."  Taken as a whole, the record supports this assertion, and we find no obvious basis for Nudo's position that the Board in fact required a "business purpose."   Nudo takes issue with one Board member's

statement that Krystowiak "request[ed] business records … [but] did not base [the assessment] exclusively on business records or lack thereof." It is unclear why Nudo finds this statement objectionable. In any case, under WIS. ADMIN. CODE § TAX 18.06(1), it was proper for Krystowiak to request "such information as is necessary to determine if the land is devoted primarily to agricultural use." Certainly "business records" could have shed further light on the nature and extent of practices supporting agricultural use, irrespective of the relevance such records also might have had to a "business purpose." It also seems clear that the members who voted to sustain the assessment focused on the lack of agricultural use on the parcel, rather than on the absence of any business purpose.[6]

¶22     Nudo's next legal argument draws on a passage from *West Capitol, Inc.*, 354 Wis. 2d 130, ¶34, in which we stated that any property not explicitly described as "residential" under WIS. STAT. § 70.32(2)(c)3. can be included in that class only if it "fall[s] within the ordinary meaning of the term 'residential.'"[7] Nudo posits that the ordinary (dictionary) definition of "residential" does not encompass

----

[6] For example, one member summarized the evidence presented and concluded, "[N]o evidence has been presented that would convince me that the primary purpose of the entire 8.9 acres, or even a predominant portion thereof, is to cultivate walnuts.… My opinion is that the Nudo property is a piece of land that happens to have some things growing on it." Another member concluded, "In going by the property and seeing what is the land used for … I don't see any farming, I don't see agriculture … I believe the fact that there are walnut trees on [the property] is just the fact that a hundred years ago or however long ago when those walnut trees were planted … and I feel that [the fact that] they happen to be on that property does not make it agricultural."

[7] Recall that "residential" is not precisely defined in the statute but is rather described by what it "includes." *See* WIS. STAT. § 70.32(2)(c)3. (residential property "includes … untilled land that is not suitable for the production of row crops, on which a dwelling or other form of human abode is located"). In essence, Nudo argues that if land does not fall within the statutory description of what is expressly included as "residential," then the only other source we can refer to in classifying such property is an ordinary dictionary.

uninhabitable property such as this; therefore, the Board acted contrary to the law in sustaining that classification. The problem with this argument is that appraisers and boards cannot rely on ordinary dictionary definitions in the face of binding authority providing specific guidance on this point—namely, the statutes, rules, and (where not conflicting with such) WPAM. And the WPAM, in fact, provides a number of guidelines for determining whether vacant land not ordinarily thought of as "residential" should nonetheless be so classified for property tax purposes.[8] *See* WPAM 12-1. Based on his testimony, it appears that Krystowiak relied on these guidelines, which together seek to determine whether residential use is "reasonably likely or imminent." *Id.* We will further discuss the WPAM guidelines in the next section, when we review the sufficiency of the evidence. For our purpose here, it is enough to say that Krystowiak and the Board relied upon the proper sources for classifying Nudo's property.

¶23    Somewhat in keeping with the "ordinary meaning" argument, Nudo next claims that the Board acted contrary to law by considering the property's future use (residential development) as relevant to its present classification as of January 1, 2018. As we have previously explained, under the WPAM, the intended future use of the property certainly *is* a pertinent consideration, and in fact may be dispositive in the absence of sufficient evidence to support a different classification. The WPAM states that the residential class "includes vacant land in cities and

---

[8] The quote from *West Capitol, Inc.* that Nudo relies on is taken out of context. *See West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶34, 354 Wis. 2d 130, 848 N.W.2d 875 ("Aside from the property specifically described in [WIS. STAT.] § 70.32(2)(c)3., any other property included in the residential class must fall within the ordinary meaning of the term 'residential.'"). Nowhere in *West Capitol, Inc.* did we hold that the dictionary definition of "residential" controls the classification of land as such, particularly with respect to considerations of future use. The point of the quoted sentence was merely that land demonstrably *not* residential, such as a cemetery or parking lot, is not within the "ordinary meaning" of residential. *Id.* We then made clear that, consistent with the WPAM, "a vacant property may be classified as residential if *it is most likely to be used* for residential development." *Id.*, ¶35 (emphasis added).

villages where the most likely use would be for residential development." WPAM 7-14. Furthermore, the WPAM guidelines for residential classification concern future use: whether "the actions of the owner(s) [are] consistent with an *intent* for residential use," whether "residential zoning [is] *likely* to be allowed," whether "the parcel's topography or physical features *allow for* residential use" and "any other factors … which would indicate residential use is *reasonably likely or imminent*." WPAM 12-1 (emphases added). *See also **Thoma***, 381 Wis. 2d 311, ¶¶3-6, 18-25; ***West Capitol, Inc.***, 354 Wis. 2d 130, ¶¶35-45 (applying the above principles to conclude that the most likely use of the property at issue was residential development). The assessor and the Board considered future use under these parameters, noting, for example, the property's location within the "St. Peter's Neighborhood Plan." The argument that such consideration was improper is without merit.

¶24 Finally, Nudo argues that the Board did not sufficiently account for the parcel's "A-2 Agricultural" zoning status. Nudo concedes, however, that zoning is not determinative of agricultural classification. Indeed, as should be evident from our discussion so far:

> [C]lassification of real property for tax assessments is based on how the property is being used. Zoning, injunctions, ordinances, and contracts do not trump actual use for tax assessment purposes. Although an injunction, contract, or ordinance may be presented to argue how the property is supposed to be used, none can be the decisive factor for tax assessment purposes. *Actual use controls whether property qualifies for agricultural or any other classification ….*

*Thoma*, 381 Wis. 2d 311, ¶17 (emphasis added; citations omitted); *see also* WIS. STAT. § 70.32(2)(a) (the assessor shall classify the property "on the basis of use"). Accordingly, whether and how the A-2 designation impacts the property's

14

classification is encompassed by our review of the sufficiency of the evidence, to which we now turn.

The Board's Decision Was Supported by Sufficient Evidence

¶25   Nudo's second certiorari challenge is based on sufficiency of the evidence.  Nudo bears a heavy burden on this point.  On certiorari review, courts determine the sufficiency of the evidence by applying the "substantial evidence" test.  *AllEnergy Corp.*, 375 Wis. 2d 329, ¶74.  "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion."  *Cornwell Personnel Assoc., Ltd. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705 (Ct. App. 1993).  Consistent with the deference we owe to the superior fact-finding capabilities of the assessor and the board, such "quantum" is "less than a preponderance of the evidence" but "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.'"  *See AllEnergy Corp.*, 375 Wis. 2d 329, ¶76 (citations omitted).  Where there is substantial evidence, the board's decision must be affirmed, even where the evidence would also support a contrary determination.  *See Von Arx v. Schwarz*, 185 Wis. 2d 645, 656, 517 N.W.2d 540 (Ct. App. 1994); *AllEnergy Corp.*, 375 Wis. 2d 329, ¶75.  Put another way, the board's decision may be set aside only "if a reasonable man, acting reasonably, could not have reached the decision from the evidence and its inferences."  *See Omernick v. DNR*, 100 Wis. 2d 234, 250-51, 301 N.W.2d 437 (1981) (citation omitted).

¶26   We conclude that substantial evidence supported the Board's decision.  As discussed above, where it is unclear whether a vacant parcel should be classified as residential, the assessor must consider whether "the most likely use would be for residential development," according to the following guidelines:

- Are the actions of the owner(s) consistent with an intent for residential use?

- Is the size of the parcel typical of residential or developing residential parcels in the area?

- Is the parcel zoned residential or is residential zoning likely to be allowed?

- Is the parcel located in a residential plat, subdivision, [certified survey map] or near other residential development?

- Does the parcel's topography or physical features allow for residential use?

- Is the parcel located in an urban or rapidly changing to urban area, as contrasted with a location distant from much residential activity[?]

- Are there any other factors affecting the parcel which would indicate residential use is reasonably likely or imminent[?]

WPAM 7-14, 12-1.

¶27    The answers to these queries provide ample support for a residential classification in this case.  Nudo purchased the parcel with the intent "to eventually develop it" into subdivided single-family residential lots.  It did not take any actions inconsistent with that goal.  The parcel's size, location, and physical features allow for residential use.  The property is located within the City of Kenosha, in the A-2 Agricultural "holding zone" that preserves land for urban development.  In addition, the property is part of the "St. Peters Neighborhood Plan," meaning that the City expects and encourages residential development in this location.  In short, there was sufficient evidence to sustain this classification, based on the property's likely future use.

¶28    Notwithstanding the above, Nudo could have overcome the presumptive residential classification through "a sufficient showing" that the

property's current primary use was in fact agricultural. *See* WIS. STAT. §§ 70.47(8)(i); 70.32(2)(a)4., (c)1g. No such showing was made here. We begin by noting that a single parcel of land may contain several classifications, based on differences in use. *See, e.g.*, WPAM 14-22 through 24. Mr. Nudo did not argue to the Board that the portion of his parcel containing the walnut trees should be separately classified as agricultural, although he apparently discussed this possibility with Krystowiak. The Board independently asked Krystowiak about the prospect of some type of "compromise," but Krystowiak responded that it would be "problematic" to classify even the walnut grove as agricultural. Nonetheless, for the sake of completeness, and because our analysis differs depending on the portion of property considered, we will separately address whether agricultural classification should attach to: (1) the larger portion of the parcel, containing few or no walnut trees; (2) the smaller portion of the parcel containing the walnut grove; and (3) the entire parcel considered as a whole.

¶29 One principle is key to all three considerations: the agricultural classification does not attach merely because plants falling within the DOR definition of "agricultural use" happen to be growing on the property.[9] *See* WIS. ADMIN. CODE § TAX 18.05(1). Agricultural *activity* is necessary. Although Nudo appears to take issue with this principle, it clearly follows from the plain language of our statutes and rules. *See* WIS. STAT. § 70.32(2)(a) (classifying properties according to *use*); sec. 70.32(2)(c)1g.-1k. (requiring agricultural *use* and, where required, agronomic *practices*); WIS. ADMIN. CODE § TAX 18.05(1)(a)-(c) (defining "agricultural use" as either specified "[a]*ctivities*" or "[g]*rowing* Christmas trees or ginseng" (emphasis added)). We note too that previous decisions appear to have

---

[9] Although not at issue here, this same principle applies to activities within the animal production subsector. *See* WIS. ADMIN. CODE § TAX 18.05(1)(b).

taken this requirement as a given. *See, e.g.*, ***Thoma***, 381 Wis. 2d 311, ¶¶20-23 (focusing on whether the taxpayer was actively farming the property or merely growing ground cover); ***Ogden***, 385 Wis. 2d 676, ¶31 (emphasizing that the relevant inquiry is whether the taxpayer was growing [as opposed to "marketing, selling, or profiting from"] crops). And in addition to being mandated under the law, this result is sensible, just, and consistent with public policy. Although there are sound reasons for according agricultural land preferential treatment, this necessarily increases the burden on other taxpayers. Properties should not qualify for agricultural classification through happenstance.

¶30 We begin, then, with the portion of the property that most clearly cannot be considered agricultural under any reasonable view of the evidence. This is the portion containing few or no walnut trees and consisting of "extremely heavy underbrush" that "you could get lost in." The area was "scattered" with an unknown number of Christmas trees, which Nudo did not plant, harvest, or cultivate in any fashion. There were no chickens or other livestock raised on this portion in 2017, the relevant time period (and according to Krystowiak, there was "no evidence of livestock being allowed or able to roam free" anytime thereafter). *See* WIS. ADMIN. CODE § TAX 18.05(4). In sum, Nudo offered no meaningful evidence rebutting the presumption that this portion of land was not "devoted primarily to agricultural use." *See* WIS. STAT. § 70.32(2)(c)1g.

¶31 That leaves the smaller portion of the property, containing the walnut trees. The only actions Nudo took with respect to these trees were cutting a trail to their location, planting the protective "windbreak packet," and engaging in vague efforts to gather some undisclosed quantity of walnuts. As a result, there was little or no evidence that Nudo met the initial DOR criteria by which an assessor "shall classify land as agricultural." *See* WIS. ADMIN. CODE § TAX 18.06(1). That is, this

portion did not "bear physical evidence of agricultural use" ("such as furrows, crops, [or] fencing"), as is "typical[]" of agricultural land. *See id*.

¶32     As previously explained, where such physical evidence is insufficient to determine agricultural use, the assessor may request "such information as is necessary to determine if the land is devoted primarily to agricultural use." *Id.* Krystowiak did so here and was told by Mr. Nudo, "[Y]ou already have all my information"—meaning Krystowiak "did not get anything new" and "was basically left as to where [he] was before." It was Nudo's, not Krystowiak's, burden to establish agricultural use; for example, by submitting documentation to establish the yield of walnuts or by providing evidence of agricultural practices. Nudo's failure to do so meant that Krystowiak (and by extension, the Board and this court) was left with almost no information to substantiate Nudo's claim. For example, not only do we not know the yield of walnuts, or the time or effort spent harvesting them, but the assessor was told virtually nothing of *any* efforts—such as fencing, pruning, treating, pest control, or soil management—that would suggest that the primary purpose of this property was the cultivation of walnut trees.

¶33     On the basis of the evidence that was made available, and given the highly deferential standard to which we are bound, we cannot say that the Board erred in sustaining the assessment. That is, Nudo did not overcome the presumption of correctness that attached to the residential classification. *See* WIS. STAT. § 70.47(8)(i). We further note that the record does not support Nudo's assertion on appeal that the Board rigidly required evidence of "harvesting" or any other particular practice, while ignoring valid evidence indicating agricultural use. Rather, the Board rightly looked at *all* the available evidence to conclude that total agricultural activity was minimal—and thus, the "primary use" of the property was not agricultural.

¶34 This evidentiary shortcoming underscores an important policy consideration: landowners should not be permitted to take advantage of the favored treatment our legislature has accorded farmland properties by resort to nominal agricultural practices. Agricultural status is not achieved through use of dubious labels ("Nudo Farms") or by engaging in sporadic and desultory farming efforts (e.g., spending a day or two gathering some unspecified amount of edible product from naturally growing vegetation).[10] Indeed, the WPAM directs the assessor to "be aware of questionable [agricultural] classification claims," including "gardens … cultivated in urban areas" and "gardens … cultivated in rural areas for personal consumption." WPAM 14-17.

> When these and other questionable classification claims arise the assessor should develop a comparative analysis of the standard agricultural production practices with the land in question…. Generally, a single violation of an industry standard should not automatically preclude land from agricultural classification. However, an assessor should analyze a trend of several instances that are inconsistent with the industry standards and employ the information to develop and defend a land classification determination.

WPAM 14-18.

---

[10] Here the evidence supporting agricultural classification was particularly sparse, possibly because there was no such evidence, but possibly also because of Nudo's own actions during the assessment period and on Board review. As discussed, Nudo provided Krystowiak with little information corroborating agricultural use, and Mr. Nudo's testimony on key points was often vague. In addition, it appears that Nudo did not permit Krystowiak access to its property (this fact was not in the record, but Nudo asserts so in its appellate briefing). This was, of course, Nudo's right, but assessments are made according to the assessor's "actual view or from the best information that the assessor can practicably obtain," WIS. STAT. § 70.32(1), and agricultural assessments, in particular, typically rely on "physical evidence of agricultural use," WIS. ADMIN. CODE § TAX 18.06(1). We remind property owners that they bear the burden of challenging their tax classification and should generally take every afforded opportunity to develop an evidentiary record in support of their desired classification.

¶35 Coincidentally, the WPAM uses the example of walnut production. Therefore, if we needed any affirmation of our decision here, it is that there is little evidence that Nudo adhered to basic "walnut industry standards." *Id.* The WPAM asks, for example, "What is the spacing between the trees?"; "Were the trees thinned?"; and "Have measures been taken to ensure proper tree growth, which can include tree pruning, weed control, animal control, etc.?" *Id.* Here, the trees were not spaced, thinned, or cultivated through the above measures.[11] The WPAM also asks, "Are the site characteristics conducive to walnut production?" *Id.* As the walnut trees were surrounded by brush, accessible only by path, and unirrigated (there was no running water on the property), we have no trouble answering this question in the negative. We do not even know "the number of walnut trees per acre." *See id.* In short, even if Nudo's case were a close call under our statutes and rules, it would not be under the WPAM.[12]

_____

[11] Although Nudo provided few details about the "windbreak packet," such as the effort spent planting it or its utility to walnut cultivation, we can assume that this might be a measure "taken to ensure proper tree growth." Nonetheless, this was the only measure that Nudo arguably took in line with WPAM guidance and, the Board implicitly found, was insufficient to establish agricultural use.

[12] In reaching the opposite conclusion, the Dissent (correctly) notes that tax assessment of agricultural land is retrospective, in that land must be "in an agricultural use for the production season of the prior year." *See* WIS. ADMIN. CODE § TAX 18.05(4); *supra*, ¶¶13-15; Dissent, ¶¶1-2. We uphold the Board's decision for precisely that reason: there was substantial evidence that Nudo's land was *not* in an agricultural use *during the production season of 2017*, the relevant tax assessment year. Of course, in contrast to the agricultural classification, the residential classification may take into account whether residential use is "reasonably likely or imminent." *See supra*, ¶¶13, 22-23. The Dissent appears to take issue with this principle, but this is the law and precedent to which we are bound. *See Thoma*, 381 Wis. 2d 311, ¶18; WIS. STAT. § 70.32(2)(c)3; Dissent, ¶3. Furthermore, the Dissent's implication notwithstanding, our decision in no way supports the premise that an assessor could classify land as residential based only on its potential for future residential development, *if such land were, in fact, demonstrably agricultural*. That property would properly meet the definition of "agricultural land," so as a matter of both fact and law, the assessor could not treat the land as vacant or apply WPAM guidelines for determining when vacant land should be classified as residential.

¶36     Our supreme court's decision in *Ogden*, on which Nudo places considerable reliance, provides a helpful contrast to this case.  In *Ogden*, "[t]he evidentiary record before the Board conclusively show[ed]" that the property at issue was agricultural because it was "devoted primarily to agricultural use"—that is, it was "chiefly put towards the growing of Christmas trees, apples, and hay" in the prior production season and, as of January 1 of the tax assessment year, was not put towards an incompatible use.  *Ogden*, 385 Wis. 2d 676, ¶¶36, 42.  In particular, the Christmas and apple trees were "individually staked out and planted in clean rows," the hay was "consistently planted and harvested," and the owners indicated plans for future harvests.  *Id.*, ¶43.  Here, the evidence before the Board demonstrated the opposite:  no planting, no cultivation, and no concrete plans for future production.  Both *Ogden* and this case concern property (allegedly) farmed without a business purpose, but the similarity ends there.

¶37     Because neither portion of this property is properly classified as agricultural land, it is obvious that the entire property cannot be so classified.  We separately consider the classification of the whole only to recognize that there are "grey area[s]" (as Krystowiak put it) in determining agricultural classification.  For example, a "hobby farm is generally devoted to residential use, with an incidental agricultural use" and should therefore be classified as residential.  WPAM 14-10.  At some point, the agricultural use becomes more extensive, and the agricultural designation more appropriate.  It is not our role on certiorari review to precisely define where that line lies—this, of course, involves a fact-specific inquiry—and we decline any attempt to do so here.  We hold only that neither the law nor the evidence permits us to overturn the residential classification of an overgrown, uncultivated vacant lot awaiting future residential development, given the minimal showing of agricultural activity in the record before us.  We affirm.

22

*By the Court.*—Order affirmed.

No. 2019AP1618(D)


¶38 REILLY, P.J. (*dissenting*). ***Ogden*** requires that the tax assessment of agricultural land be made retrospectively rather than prospectively. *See **State ex rel. Peter Odgen Fam. Tr. of 2008 v. Board of Rev.***, 2019 WI 23, ¶¶28-31, 38-41, 385 Wis. 2d 676, 923 N.W.2d 837. To determine whether land is entitled to be classified as "agricultural land," the relevant statutes and administrative rules instruct that we are to look to whether the land is "devoted primarily" to "'growing' the relevant crops" as of "January 1 of the assessment year" and not whether the property owner is "marketing, selling, or profiting from them." *Id.*, ¶¶28-31, 38 (citations omitted); *see also* WIS. ADMIN. CODE § TAX 18.05(4) (July 2018) ("'Land devoted primarily to agricultural use' means land in an agricultural use *for the production season of the prior year*, and not in a use that is incompatible with agricultural use on January 1 of the assessment year." (emphasis added)). This necessarily requires looking back rather than forward in the assessment. If land is "devoted primarily to agricultural use," then "as a matter of law" the land is "entitled to be classified as 'agricultural land.'" ***Ogden***, 385 Wis. 2d 676, ¶44; *see also* WIS. STAT. § 70.32(2)(c)1g. As the Majority errs in applying a prospective application of tax assessment law to Nudo Holdings, LLC's land, I respectfully dissent.

¶39 Land has an "agricultural use" if it is put "chiefly … towards agricultural use." ***Ogden***, 385 Wis. 2d 676, ¶39. As of January 1, 2018, Nudo's 8.9 acre vacant land was in an unimproved state: it had no habitable structures, it had no sewer or water, it was registered by the State of Wisconsin as "livestock premises," it was licensed by the City of Kenosha to have poultry, it had a walnut

grove to harvest, it had trees planted by Nudo to protect the walnut trees, and it had Christmas trees for harvest. Nudo's land had no residential use as of January 1, 2018—only a desire by Nudo that it be residential in the future and only a desire by the City that it receive taxes for Nudo's property as if it was residential property.

¶40 The reason our statutes and administrative code regulations apply a retrospective assessment to agricultural land is that a landowner can be priced off his or her land by the government's imposition of a tax based upon the prospective use of the land. As the Majority recognizes, our legislature has determined that "fair market" valuation does not apply to agricultural land in order to protect our farm economy and to curb urban sprawl. Majority, ¶12. If assessors apply a consideration that "residential use is reasonably likely or imminent," *see* Majority, ¶¶22-23, which is really just another way to apply a "highest and best use" fair market value approach,[1] then assessors would consistently be conducting a fair market value assessment rather than the agricultural land assessment pursuant to ***Ogden***. If land as of January 1 is devoted to agricultural purposes, then fair market valuation does not apply and a business purpose is not required for the land to qualify as "agricultural land" for property tax purposes. ***Ogden***, 385 Wis. 2d 676, ¶33; *see also* WIS. STAT. § 70.10; WIS. ADMIN. CODE § TAX 18.05(4).

¶41 Both the City of Kenosha and the State of Wisconsin gave official recognition to Nudo's agricultural use of his vacant land, and ***Ogden*** makes clear that growing trees for later harvest is an agricultural use. ***Ogden***, 385 Wis. 2d 676, ¶43. I respectfully dissent.

---

[1] Fair market value "must reflect its 'highest and best use,'" i.e., a prospective consideration. *See **Forest Cnty. Potawatomi Cmty. v. Township of Lincoln***, 2008 WI App 156, ¶10, 314 Wis. 2d 363, 761 N.W.2d 31 (citation omitted); *see also* WIS. STAT. § 70.32(1).

2